UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANTON TANG, a Michigan
resident,

        Plaintiff,

  v.                                Case No. _____

NEXSTAR MEDIA INC., a Delaware
corporation,                     Hon. _____

        Defendant.

---

**Todd R. Knecht (P35362)**
**KNECHT LAW, PLC**
P.O. Box 68292
Grand Rapids, MI 49516
Tel: 616-308-4716
trknechtlaw@gmail.com
*Attorneys for Plaintiff*

---

## SUMMONS AND COMPLAINT
## DEMAND FOR JURY

      Plaintiff, by his attorneys, for his Complaint against Defendant, Nexstar Media Inc., states as follows:

### PARTIES

      1.     Plaintiff, Stanton  Tang,  is a resident of Kent County, Michigan. By this action, he seeks redress for the damages he suffered and continues to suffer as a result of the publication(s) of Defendant's materially false and defamatory statements (directly or by implication), which subjected him to undeserved scorn and humiliation as a respected television news editor with many years of experience working at TV stations in Michigan and, previously, in Northern California, Nevada and Arizona.

2.      Defendant, Nexstar Media Inc. ("Defendant" or "Nexstar"), is a Delaware corporation with its principal place of business at 545 East John Carpenter Freeway, Suite 700, Irving, Texas 75062. Nexstar does business in Kent County, Michigan and elsewhere in this State. Its registered agent in the State of Michigan is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911.

### JURISDICTION AND VENUE.

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among the parties and an amount in controversy in excess of $75,000, excluding interests and costs.  Plaintiff is a citizen of the State of Michigan. Defendant Nexstar is a citizen of Delaware, its state of incorporation.

4.      Both general and limited personal jurisdiction over Nexstar exists pursuant to MCL § 600.711 (general jurisdiction) and MCL § 600.715 (limited jurisdiction). General jurisdiction exists over Nexstar because it conducts a continuous and systematic part of its general business within this State. Nexstar owns more than 160 local television stations across the United States, including WOOD TV in Grand Rapids Michigan.  It regularly conducts business in the Western District. Limited jurisdiction exists over Nexstar because a substantial part of the events giving rise to Plaintiff's cause(s) of action occurred in this District.

5.      Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the District.

## SUMMARY OF THE CASE

6.      This action is brought against Nexstar, pursuant to the Michigan common law of defamation, defamation per se, defamation by implication and false light, for (among other things) Nexstar's deliberate publication and promotion of a false narrative concerning Plaintiff, its self-serving

2

abandonment of objective truth and its false portrayal of Plaintiff (directly or by implication) in the public square.

7.      It is also brought pursuant to the Bullard-Plawecki Employee Right to Know Act, `MCL § 423.501 et seq. (the "ERKA"), based on Nexstar's deliberate infringement of Plaintiff's rights under MCL § 423.505 and 506. Among other  violations of the ERKA, Defendant notified news media outlets of disciplinary action taken against Plaintiff, without providing Plaintiff the notice required by MCL § 423.506. Defendant also violated the MCL § 423.505 of the ERKA by knowingly placing false information in Plaintiff's personnel file in violation of the ERKA.

8.      Plaintiff's claims arise out of Defendant's malicious actions in defaming him (directly or by implication) and in destroying the excellent reputation Plaintiff had built over the course of his 35 years in local TV news, and for the vindictive and retaliatory actions of its own managerial personnel (including, but not limited to, Luke Stier, Madeline Odle, Gary Weitman and Julie Brinks) while acting within the scope of their respective employment on behalf of Nexstar and/or which Defendant Nexstar ratified and/or adopted.

9.      Plaintiff asked the Assistant News Director, Amy Fox, to prepare and distribute (by email) an internal memorandum (the "Internal Memo" – Ex. 1) to Nexstar's news staff reporters reminding them to consider the newsworthiness of events being covered during Pride Month in the West Michigan area. As Nexstar has already conceded, this Internal Memo was not intended for publication to third parties and its message was not discriminatory.  To the contrary, it was entirely consistent with Nexstar's stated policy(ies) of presenting all points of view, and the unbiased coverage of all newsworthy topics with balance. Unfortunately, one or more of Defendant's employees leaked the Internal Memo to outside media resulting in a firestorm of negative publicity, including at least 47 articles or substantive internet posts concerning the Internal Memo, many of which defamed Plaintiff's professional reputation as a

news director, directly or by implication. Instead of echoing or corroborating Plaintiff's contention that the Internal Memo was in fact consistent with the Nexstar Standards Guide; or disavowing the false statements or implications by their own managerial personnel concerning Plaintiff; or even just responding with a "no comment" once the Internal Memo was made public,  Nexstar engaged in a concerted effort to protect itself by falsely implying that (among other things) Plaintiff was anti-gay, thereby destroying Plaintiff's professional reputation among the news media and the public in general.

10.     Nexstar's (direct and implicit) defamatory statements, postings, and unfounded charges concerning Plaintiff have been published and then republished electronically on public websites. They are recorded forever, and may be located and viewed at any time by anyone in the future based on random or targeted search.  The negative impact of these false and defamatory statements upon Plaintiff's professional reputation and personal life cannot be overstated.

## GENERAL ALLEGATIONS

### Background

11.     Plaintiff is an award-winning journalist. As of June 2013, Plaintiff had built a stellar reputation as a news director. Prior to 2005, he worked at KPNX in Phoenix, KCRA in Sacramento and KLAS in Las Vegas.  From 2005 until 2009, he served as an Executive Producer at WZZM covering the Grand Rapids - Battle Creek - Kalamazoo market.  He was promoted to News and Information Director at WZZM in 2009 and served until his departure in 2014. He was News Director at  Kolo-TV in Reno, Nevada from 2014 until November 2021. Finally, he was News Director at WOOD TV from December 2021 until the effective date of his firing from Defendant's employ on July 1, 2023.

12.     Among other awards and accolades, Plaintiff was inducted into the Nevada Broadcasters Association Hall of Fame in 2016 for excellence in broadcasting. In November 2021, he was inducted into the NATAS-SF Silver Circle, one of the news reporting industry's elite societies. To be eligible for

membership, individuals must have been actively engaged in television broadcasting for 25 years or more, made a significant contribution to its local television markets and distinguished themselves within the industry and the community.

13.     Plaintiff served as News Director at Nexstar's wholly owned "WOOD TV" station from December 2021 until the termination of his employment effective July 1, 2023.  As News Director, Plaintiff's duties included the following, among others:

    a.  Overseeing all on-air news coverage including guiding and directing the editorial direction of the newsroom;

    b.  Supervising all hiring and personnel decisions for the newsroom;

    c.  Administering staff development and mentoring;

    d.  Managing the financial budget for news operations;

    e.  Guiding strategic decisions for the on-air newscasts, including the addition of news programming and special broadcasts;

    f.  Analyzing and implementing strategies based on research and news ratings;

    g.  Ensuring that the news operation abides by the Nexstar News Standards Guide and  direction from Senior Station Management.

14.     During the course of his employment, Plaintiff's performance evaluations consistently stated that his performance met or exceeded expectations. Plaintiff was described as having brought stability to the newsroom by Defendant's managerial personnel.

15.     While employed by Nexstar, Plaintiff instituted and successfully launched the 4pm News addition.  He also developed an MMJ [Multi-Media Journalist]-in-Training program aimed at providing in-depth reporting knowledge in a short period of time (six months).  The MMJ in Training spent time with the investigative unit to learn about diving deep into stories, time on the assignment desk, and was introduced to the court system to learn how to research criminal cases.  Plaintiff also led the 2022 political coverage featuring outstanding debates for Michigan gubernatorial primary and general elections, and

he improved newsroom procedures including tracking major projects and simplifying FCC News Issues reporting, among other things, among other positive actions.

## Plaintiff Strove To Ensure News Reporting Consistent with the "Nexstar's Standards Guide"

16.     Throughout his tenure in Nexstar's employ, Plaintiff served Nexstar faithfully, striving to achieve balance, fairness and accuracy in reporting the news in accordance with the Nexstar Standards Guide and direction from Senior Station Management.  At the direction and/or with the express and/or tacit approval of Defendant's managerial personnel, Plaintiff strove to ensure that coverage by the news reporting staff was consistent with the stated policies in the Nexstar Standards Guide of (among other things) presenting balanced, unbiased coverage of newsworthy topics.  It was part of his job.

17.     By working to achieve a balance in the station's news coverage, Plaintiff was acting in accordance with Nexstar's core journalism principles, e.g., to achieve balance, fairness and accuracy in reporting the news and, most importantly, to ensure that WOOD TV and Nexstar are always perceived as a reliable source for news and information.

18.     To date, Nexstar has never put forth even a shred of evidence tending to show that Plaintiff's job performance was inconsistent with Defendant's written standards for reporting the news as stated in the **Nexstar Standards Guide** and as expressed to Plaintiff directly by Julie Brinks, the General Manager of WOOD TV:

> **At Nexstar we are a reliable source for news and information. Balance, fairness, and accuracy are fundamental to our news coverage....**
>
> **Accuracy and truth...Seek the truth.  Be diligent in the pursuit of accuracy. Ensure everything we air and publish is true. Getting the facts right is more important than being first to air, online or social media.**
>
> **Fairness and impartiality...We present all points of view...We put our personal biases aside to approach the topics we cover with balance.**

6

(Ex. 2 – Nexstar Standards Guide, at p.1)(Emphasis supplied)

19.     As stated, Plaintiff's job included ensuring that the news coverage and output by the reporting staff met the requirements in the Nexstar Standards Guide. (Ex. 2)  As a News director, Plaintiff was responsible for instilling quality control standards within the news reporting staff and implementing content management procedures that ensured proper editorial oversight of broadcast and digital staff.  As part of his efforts to ensure fair, unbiased and evenhanded reporting in accordance with the Nexstar Standards Guide, Plaintiff conducted mandatory quarterly Standards refresher training for every employee on the news reporting staff.  Among other things, this training focused on **the crucial importance of accuracy and balanced reporting of the news, including but not limited to, the need for a second set of eyes on every story.**

## Events Leading to the Creation and Distribution
## of the Internal Memo on June 13, 2023

20.     The month of June 2023 was  designated as Pride Month in Michigan. On May 31, 2023, WOOD TV posted on its web site (under "Grand Rapids"), a **"LIST: 2023 Pride Month events in West Michigan"** which identified at least 30 events set to occur between May 31, 2023 and July 2023.[1]

21.     On or about the morning of June 13, 2023 and at other times, Plaintiff reviewed the station's ongoing news coverage of various topics, events and informational items, to ensure they were newsworthy, including but not limited to, Defendant's coverage of Pride Month. In the course of performing his job  as News Director and in full compliance with the Nexstar Standards Guide, Plaintiff noticed that WOOD TV appeared to be covering and/or publishing almost every *item of information*

---

[1] Skog, Anna, (5.31.2023 at 10:12 am), ***LIST: 2023 Pride Month events in West Michigan***, WOODTV.COM, Retrievable   at:   *https://www.woodtv.com/news/grand-rapids/list-2023-pride-*month-events-in-west-michigan/?ipid=promo-link-block1

.

related to or arising out of "Pride Month," regardless of its newsworthiness.  By way of example only, WOOD TV's web site included reports on approximately fourteen Pride-related items between May 30, 2023 and June 12, 2023.

22.     On the morning of Tuesday, June 13, 2023, Plaintiff attended the General Manager's daily management meeting via Zoom which lasted approximately 30 minutes.  When the meeting concluded, Plaintiff went to his office where he noticed an email from a WOOD TV reporter informing him that the reporter was planning to cover a Pride event to be held in Three Rivers, Michigan, which is located at the outer edge of the Wood TV viewing area.  Plaintiff discussed the matter with Assistant News Director, Amy Fox, including the fact that the station had already done a number of stories on Pride month-related events.

23.     At Plaintiff's direction, Assistant News Director Amy Fox prepared an internal memorandum (the "**Internal Memo**") in email form to Defendant's staff reporters recommending that they provide more balanced coverage of Pride Month events in the West Michigan area. (**A copy of the Internal Memo is attached as Exhibit 1**). The Internal Memo stated that the station had already done a number of "valuable stories" on Pride month-related events but that "we have also started to hear pushback from viewers who are not happy to see those Pride-related stories."  The Internal Memo added that not every Pride Month event "needed to be covered," and it encouraged employees to be "thoughtful" about which stories they chose to pursue. "We do not cover every event or festival that happens in West Michigan. We simply do not have the time or staff to do so," it stated.  According to the Internal Memo, "We need to do some work to discern the newsworthiness of the event. If we are covering Pride events, we need to consider how to make the story balanced and get both sides of the issue." (Ex. 1)

8

24.     Nexstar has conceded that the Internal Memo was intended solely for the news staff and it ultimately fired two executive producers on suspicion of leaking the Internal Memo.  It was not intended for publication to third parties.  The Internal Memo was an internal, confidential email intended solely for the news reporting staff, and certainly not for publication to third parties, the media or the public in general. Its preparation and limited, internal distribution was consistent with Plaintiff's practice of advising and directing Defendant's staff reporters on matters pertaining to the manner of reporting the news. It's internal dissemination was governed by Nexstar's "Confidential/Proprietary Information" policy which provides in part that "**Confidential information is critical to the Company's competitive advantage…" and that "[n]o confidential information learned during employment with the Company may be disclosed to any other party …for any reason**." (Ex. 3 – Nexstar Media Group Employee Guide Book, at p.29)  It did not disparage any particular viewpoint.   Its message was consistent with the stated Nexstar policy(ies) of (among other things) presenting all points of view, and approaching the unbiased coverage of all topics with balance and fell squarely within Plaintiff's job description as it relates to WOOD TV's coverage of any topic of public interest upon which there might be excessive or too little coverage.

25.     Following the distribution by email of the Internal Memo to the  news staff on June 13, 2023, several WOOD TV employees expressed their irritation and their objections to its contents, characterizing it as "anti-gay" and other, similar labels.  In response to the objections and negative responses (on June 13, 2023) by several of the news reporting staff, Plaintiff and Amy Fox advised staff members (that same day) that  the Internal Memo and the station's coverage of Pride Month would be discussed that afternoon following the daily news editorial meeting usually held around 2:45 pm.

26.     Meanwhile, Amy Fox emailed Julie Brinks at 2:31 pm on June 13, 2023 (with a copy to Plaintiff) informing Ms. Brinks that according to an email from Michele DeSelms (another Nexstar

employee),  the General Manager and someone from HR should be present  "**any time we are being encouraged to discriminate against any group**…" (Ex. 4)  At 2:38 pm the same day, Julie Brinks replied to Amy Fox, stating in pertinent part: "**Honestly, I do not understand how any of this is discriminating against anyone...**" (Ex.4 )

27.    Plaintiff and Amy Fox met with the news staff later the same day (at about 2:45 pm on June 13,  2023).  Plaintiff confirmed to the staff that Amy Fox had written and distributed the Internal Memo at his direction.  He reminded them that  in reporting the news, it was important to remain objective and neutral. He told them it was in the station's best interests not to be seen as leaning one way or the other when it came to coverage of controversial issues or cultural debates. Several WOOD TV employees expressed their irritation and their objections to its contents, characterizing it as "anti-gay" and other, similar labels.

## The "Internal Memo" is Leaked to the Public

28.    Starting on or about June 14, 2023 and continuing thereafter, portions of the Internal Memo itself and internal matters related to it were leaked to media and/or social media outlets by one or more WOOD TV employees and/or commented on in various media and social media posts and/or in comments to "journalists" and/or internet "bloggers." (Ex.5, starting at p.1 and following) The existence of the memo was first reported  in the early morning on Wednesday, June 14, 2023, on something called the "FTV Live.com" website with the headline, "**THAT'S ENOUGH GAY STUFF IN THE NEWSCASTS**." (Ex.5, at p.1)

29.    As early as June 14, 2023, media outlets were falsely reporting that Plaintiff, in his capacity as news director at WOOD TV, had directed Assistant News Director Amy Fox to prepare an Internal Memo which ordered their staff reporters not to cover Pride-related events. (Ex.5, starting at p.1 and following)  In articles and posts, the document was referenced as an "anti-gay" memo or otherwise

misrepresented in headlines such as "**Michigan TV newsroom revolts over anti-gay memo**." (Ex.5, starting at p.1) Almost immediately, the articles and posts also reported that Nexstar had publicly commented that the Internal Memo (which Nexstar referred to as "the communication") **"[was] not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers."** (Ex.5, at Item#3, p.-2-3)

30.     On June 15,  2023, an article by Executive Producer Luke Stier was posted on WOOD TV's very own website entitled, "**WOOD TV Parent Company Responds To Newsroom Memo**." (Ex.5, Item# 7, at p.5) It quoted Gary Weitman, Nexstar's chief communications officer.  **Referring to the Internal Memo as the "communication**," Weitman stated in part that **the "communication…[was] not consistent with Nexstar's values, the way we cover the news,** or **the respect we have for our viewers**" and that "**[w]e will take appropriate action as necessary to address this situation**…"  (Ex.5, Item# 7, at p.5)

31.     Also on June 15, 2023, Executive Producers, Luke Stier and Madeline Odle, publicly criticized portions of the Internal Memo on Twitter.  Stier <u>tweeted</u> : "**The guidance is not being followed. The only two people involved in its creation have been removed from any discussions surrounding @WOODTV Pride coverage as our corporation conducts a thorough investigation**." By way of examples only, Stier's tweet was published and republished on the internet by  the Detroit Free Press, Crains, TheDesk.Net (Ex.5, Items #3, at pp.2-3; #5, at p. 4; #6, at p. 5; and elsewhere in Ex.5)

32.     On June 15, 2023, the following statement by Gary Weitman, Nexstar's chief communications officer, was emailed to Crain's Grand Rapids: "We're looking into the situation at WOOD-TV, as **the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our**

viewers. **We will take appropriate action as necessary to address this situation**, and **apologize for offending members of the LGBTQ community and WOOD-TV's viewers**." (Ex.5, #6, at p. 5)

33.     On **June 15, 2023**, TheDesk.net published an article entitled, "**Michigan TV newsroom revolts over <u>anti-gay memo</u> -** *Journalists say they are not following a directive to curb its coverage of Pride Month events; the station's parent company has launched an investigation*." (Ex.5, at p.1) In it, TheDesk.net  identified Plaintiff and described his alleged role in the creation of the so-called "anti-gay memo" which caused a "swift backlash inside the WOOD-TV newsroom" according to  TheDesk.net. TheDesk.net. added: "**The admission upset a number of people, who immediately contacted the human relations department at WOOD-TV's parent company, Nexstar Media Group. Nexstar has since ordered Fox and Tang to not participate in any planning meetings or discussions about the station's coverage involving Pride Month celebrations or LGBT matters while an internal investigation is carried out**." (Ex.5, #3, at p. 2)

34.     On June 16, 2023, TheDesk.net reported that **"[f]ive newsroom employees who spoke with The Desk this week affirmed they were getting behind a growing movement at WOOD-TV (Channel 8, NBC) for Tang's resignation or firing, contributed to a hostile work environment since he joined in 2021**." In the same article, TheDesk.net accused Plaintiff of being a racist and stated (falsely) that it was another instance of Plaintiff, "interjecting his own political viewpoints in the editorial decisions of the newsroom, something he has done numerous times in the past, according to employees who spoke on condition of anonymity…Tang's reputation preceded him, according to one WOOD-TV journalist, who heard rumors about his unusual and hostile behavior at other TV stations."

35.     The preceding defamatory statements by Nexstar managerial personnel, including but not limited to, Luke Stier, Madeline Odle, Gary Weitman and Julie Brinks, were materially false because the clear meaning and/or implication was (among other falsities) that Plaintiff sent an "anti-gay" and/or other similarly mischaracterized communique to the reporting staff, that Plaintiff's alleged  "anti-gay"

bias impacted his role as news director overseeing coverage by Defendant's news reporting staff, that Plaintiff's message to the news reporting staff conflicted with  Nexstar's values.  These and other, similar comments concerning Plaintiff's character and the many other statements and comments in social media, news outlets, blogs and other media were and are false to the extent they alleged or implied that Plaintiff had engaged in misconduct and/or that he acted unprofessionally in carrying out his duties as News Director.

36.     Defendant Nexstar is responsible for the conduct of its managerial personnel, including but not limited to, Luke Stier, Madeline Odle, Gary Weitman and Julie Brinks. At all times relevant to this action, Stier, Odle, Weitman and Brinks were employees, agents, representatives and/or servants of Defendant Nexstar acting within the scope of their respective employment on behalf of Defendant Nexstar. Stier and Odle served as Executive Producers at Wood TV in the employ of Defendant Nexstar until they were fired on or about June 29, 2023.  In posting articles on Wood TV's web site and/or in making statements on social media (as more fully described herein), Stier and  Odle acted within the scope of their employment and the agency expressly granted to and/or ratified by Nexstar.

37.     The statements by Brinks and Weitman that Nexstar is "looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers" and that Nexstar "will take appropriate action as necessary to address this situation" falsely implied (and/or stated directly) that Plaintiff had engaged in misconduct and/or acted unprofessionally.

38.     Once the contents of the Internal Memo were leaked to the media, Defendant Nexstar sent its HR personnel to conduct an internal "investigation," ostensibly into the unauthorized leaking of Nexstar's confidential information (including the Internal Memo) to the media. Unfortunately, the

13

person or persons conducting the investigation on behalf of Nexstar failed to compile an accurate version of the events and made unfounded conclusions in an apparent effort to lay the entire blame for  the Internal Memo, the negative reaction of some employees to it and the storm of publicity stemming from its publication upon Plaintiff.

39.     Among other things, Nexstar created a false narrative in which Plaintiff deliberately failed to inform his general manager (during the management meeting on the morning of June 13, 2023) that he had planned all along to generate such an internal memo because, according to Nexstar narrative, he intended to promote an "anti-gay" agenda. This was false.

40.     To the contrary, Plaintiff directed Amy Fox to write and distribute the Internal Memo because it was part of his job to ensure that the news coverage and output by the reporting staff met the requirements in the Nexstar Standards Guide. Unfortunately, Defendant's personnel inserted false statements into his personnel file that that Plaintiff had directed the creation of the Internal Memo because of conversations he had had with members of his church. In addition, the memo in his personnel file falsely states that the "reason" for the termination of his employment was based upon "**evidence that [Plaintiff and Amy Fox] are violating the standards of journalism by letting its personal views impact its guidance on news coverage**."

41.     On June 16, 2023, Julie Brinks, WOOD TV General Manager, and Plaintiff's immediate supervisor, sent an email to the editorial staff, (***including, Plaintiff, Carly Munoz; Casey Jones; Charlsie Dewey; Jason Unger; Steve Gurd; and Wade Cutler***), with the subject heading, "**Memo and external communication**."(Ex. 6).  Brinks' email included **a proposed internal email to be sent to the news reporting staff.** (Ex. 6)   Her email [intended for staff] stated in part: "**I want to be very clear: The [Internal Memo] does not reflect our values, the way we cover the news, or the respect we have for our viewers**." (Ex. 6, at p.2) She noted that her email would be distributed internally, **but (she told**

Plaintiff) with the expectation that  it would be leaked outside the company. She apologized based on her perception that "the [Internal Memo] had offended many of you, and I am sorry for that."  She added that   "**members of our senior HR team are investigating what happened here**."  She explained that "**this is an internal employee relations issue, and we have a process for handling these types of situations**." She made an additional request that **[as they "always do"], the staff should "please make sure [they] forward any media inquiries directly to me."** (Ex. 6, at pp. 4-5)

42.     As part of the same email (Ex. 6), Julie Brinks included a proposed paragraph "**[f]or use with local medi**a" which stated in part: "**The [Internal Memo] regarding WOOD-TV's coverage of PRIDE month activities in the area is not consistent with our values, the way we cover the news, or the respect we have for our viewers. We will take appropriate action as necessary to address this situation, and we apologize for offending members of the LGBTQ community and WOOD-TV's viewers**." (Ex. 6, at p.3-4) She added that **she had "a sense that we may see much more over the next few days."** (Ex. 6, at p.3-4)

43.     In response to her email of June 16, 2023 (Ex. 6), Plaintiff expressed his personal objection to Brinks' contemplated message to "**local medi**a." (Ex. 6, at p.3)   In particular, Plaintiff explained to Julie Brinks that in fact the Internal Memo which Amy Fox had distributed by email (at his direction) on June 13, 2023 **was consistent** with the stated Nexstar policy(ies) of (among other things) presenting all points of view, putting  personal biases aside and approaching the coverage of all topics with balance. His email quoted the policy back to Brinks: "**The Nexstar policy says, "We present all points of view. We reach out to the subjects or stakeholders of a story. We put our personal biases aside to approach the topics we cover with balance. Nexstar journalists at all levels should refrain from political activity. Impartiality leads to trust**." (Ex. 6, at p.3) Separately, Julie Brinks agreed with Plaintiff's characterization of the Internal Memo. (Ex. 6, at p.2) She told him to stick with his position that the Internal Memo **was consistent** with the **Nexstar Standards Guide** in his role as News Director.

15

44.     It soon became abundantly clear, however, that Nexstar's true motivation was to damage Plaintiff's professional reputation and destroy his credibility by blaming him for the actions of Defendant's own personnel.  Toward this end, Nexstar's internal "investigation" was perfunctory and of limited scope conducted in whole or in part by one or more persons from Nexstar with an apparent interest in facilitating Plaintiff's ultimate termination. Instead of acknowledging that the Internal Memo truly was consistent with the **Nexstar Standards Guide**, Nexstar disavowed its contents both internally to its workforce and outwardly to the public in its repeated verbal comments and written statements to media outlets and internet publications.

### When Juxtaposed Against Related Coverage,
### Defendant's Public Comments Defamed Plaintiff's Reputation (Both Expressly and by Implication)

45.     Between June 14, 2023 and December 12, 2023, there were at least approximately 46 articles or substantive internet posts concerning the Internal Memo, Plaintiff's alleged role in its creation and distribution to the reporting staff, Plaintiff's firing and, ultimately, the start of  Plaintiff's new job. As media coverage increased, it became clear that Nexstar intended to blame Plaintiff for what was characterized as an anti-gay memo by (among other things) siding with its disgruntled employees, ratifying, adopting and/or affirming the false statements accusing him directly or by implication of engaging in misconduct and/or acting unprofessionally. These accusations were false. The alleged implications, if proven, were capable of defamatory meaning.

46.     Nexstar also failed to reject the accusations in the media (made by WOOD TV employees and repeated in publications like TheDesk.net and others). Despite these false statements in the media, neither Defendant WOOD TV nor Defendant Nexstar  made any effort to  clarify, elucidate or otherwise explain to the staff or the public that in recommending balance in the reporting staff's coverage of the news, Plaintiff was acting in accordance with WOOD TV and Nexstar's core principles, i.e., to achieve

balance, fairness and accuracy in reporting the news and to ensure that WOOD TV and Nexstar are always perceived as a reliable source for news and information

47.     Corporate representatives of WOOD TV and Nexstar, including Julie Brinks, WOOD TV General Manager, and Gary Weitman, Nexstar's chief communications officer, also commented publicly on the Internal Memo, including but not  limited to, statements to CNN, the Detroit Free Press, Crains Grand Rapids, and the Detroit news, among many others.(Ex. 5) The disclosure of the contents of the Internal Memo resulted in a veritable firestorm of negative publicity, including but not limited to, at least 46 articles or substantive internet posts concerning the Internal Memo, Plaintiff's alleged role in its creation and distribution to the reporting staff, Plaintiff's firing and, ultimately, the start of  Plaintiff's new job.

48.     When juxtaposed with comments in the media, (e.g., that Plaintiff caused the distribution of an "anti-gay" memo),  the statements by Brinks and Weitman that Nexstar is "**<u>looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers</u>**" and that Nexstar "**will take appropriate action as necessary to address this situation**" falsely implied (and/or stated directly) that Plaintiff had engaged in misconduct and/or acted unprofessionally.

49.     On **Thursday, June 29, 2023**, Plaintiff was notified that his employment was being terminated. On **Friday, June 30, 2023**, CNN reported that Stanton Tang, news director of Grand Rapids-based WOOD-TV, and Amy Fox, the station's assistant news director, had been fired "**<u>following the circulation of an internal memo calling for scaled-back coverage of Pride Month events and directing the station's journalists to 'get both sides' on LGBTQ issues.</u>**" In the same story, CNN reported that on Thursday, June 29, 2023, Gary Weitman, **<u>a Nexstar spokesperson,</u>** had confirmed to CNN "**that the**

17

**company had made changes to WOOD-TV's newsroom leadership team**." According to Weitman, these "changes **to WOOD-TV's newsroom leadership team"** were made **to "ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area**" implying that Plaintiff had been terminated from his job as News Director for failing to ensure outstanding news coverage. The preceding statements were false. In fact, he was acting in accordance with Nexstar's core principles, i.e., to achieve balance, fairness and accuracy in reporting the news [2] After he was fired, WOOD TV and Nexstar continued to make public statements defamation of Plaintiff by implication. Their falsity was made all the more damaging to Plaintiff's reputation when viewed in juxtaposition to statements.

PLAINTIFF'S REQUEST FOR RETRACTION

50.    On July 19, 2023, Plaintiff demanded  in writing that the following false or misleading statements made by or on behalf of WOOD TV and/or Nexstar concerning Plaintiff (directly or indirectly)  be retracted within 14 days of the date of July 19, 2023 (Ex.7):

> a.    On June 15, 2023, Gary Weitman, Nexstar's chief communications officer, was quoted in a posted article on woodtv.com, "About us": "We're looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers. We will take appropriate action as necessary to address this situation, and apologize for offending members of the LGBTQ community and WOOD-TV's viewers."  Plaintiff's counsel advised Nexstar: "The preceding statement by Gary Weitman, Nexstar's chief communications officer,  quoted in a posted article on woodtv.com, was false and defamatory by implication. It  portrayed our client in a false light as if he had

---

[2] Reilly, Liam (June 30, 2023),  *News directors at Michigan TV station ousted after telling staff to 'get both sides' of Pride coverage,* CNN.COM *Retrievable at:*  https://www.cnn.com/2023/06/30/media/michigan-news-directors-fired-pride-coverage/index.html.
.

engaged in misconduct when he was acting in accordance with WOOD TV and Nexstar's core principles, i.e., to achieve balance, fairness and accuracy in reporting the news. **WE DEMAND THAT THEY BE RETRACTED WITHIN 14 DAYS OF THE DATE OF THIS NOTICE.**" (Ex. 7)

b.   On June 15, 2023, a statement by Nexstar's chief communications officer, Gary Weitman, was quoted in a posted article on woodtv.com, "About us": "**We're looking into the situation at WOOD-TV, as <u>the communication regarding the station's coverage of PRIDE month activities</u> in the area is <u>not consistent with Nexstar's values</u>, <u>the way we cover the news</u>, or the respect we have for our viewers. <u>We will take appropriate action as necessary to address this situation</u>, and apologize for offending members of the LGBTQ community and WOOD-TV's viewers.**"[3] On July 19, 2023, Plaintiff's counsel demanded  in writing that the false or misleading statements made by or on behalf of WOOD TV and/or Nexstar concerning Plaintiff (directly or indirectly)  **be retracted within 14 days of the date of July 19, 2023.** In particular, Plaintiff's counsel advised Nexstar: "The preceding statement by Gary Weitman, Nexstar's chief communications officer,  quoted in a posted article on woodtv.com, was false and defamatory by implication. It portrayed our client in a false light as if he had engaged in misconduct when he was acting in accordance with WOOD TV and Nexstar's core principles, i.e., to achieve balance, fairness and accuracy in reporting the news. **WE DEMAND THAT THEY BE RETRACTED WITHIN 14 DAYS OF THE DATE OF THIS NOTICE.**"(Ex. 7)

c.   On June 16, 2023, Nexstar falsely implied **in comments it  made to CNN** that Stanton Tang had engaged in misconduct that was **"not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers**," Nexstar added (in the same comments to CNN on June 16, 2023)  that **it will "take appropriate action as necessary to address this situation" and said that it**

---

[3] Steir, Luke, (June 15, 2023 at 6:30 pm), *WOOD TV8 parent company responds to newsroom memo*, WOODTV.COM,  *Retrievable  at:*  https://www.woodtv.com/about-us/wood-tv8-parent-company-responds-to-newsroom-memo/

"apologize[s] for offending members of the LGBTQ community and WOOD-TV's viewers." [4] Plaintiff's counsel advised Nexstar: "The preceding statement by WOOD TV and Nexstar to CNN were false and defamatory by implication. They portrayed our client in a false light as if he had engaged in misconduct when he was acting in accordance with WOOD TV and Nexstar's core principles, i.e., to achieve balance, fairness and accuracy in reporting the news. **WE DEMAND THAT THEY BE RETRACTED WITHIN 14 DAYS OF THE DATE OF THIS NOTICE**." (Ex. 7)

Also on June 16, 2023, WOOD-TV general manager Julie Brinks said in a statement (**printed in AP Press**): "**WOOD-TV is committed to diversity, equity, and inclusion and to covering and reporting the news of the day in an expansive and inclusive fashion, consistent with these values**," She added that Nexstar **will "take appropriate action as necessary to address this situation, and we apologize for offending members of the LGBTQ community and WOOD-TV's viewers**." [5] Plaintiff's counsel advised Nexstar: "Again, the preceding statement(s) was/were false and/or they portrayed our client in a false light as if he had engaged in misconduct. **WE DEMAND THAT THEY BE RETRACTED WITHIN 14 DAYS OF THE DATE OF THIS NOTICE**." (Ex. 7)

d.   On Friday, June 30, 2023, a Nexstar spokesperson told **CNN** that WOOD TV and **Nexstar had made changes to the station's newsroom leadership team to "ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area**," implying that our client had

---

[4] Reilly, Liam (June 16, 2023), *Nexstar investigates after Michigan news station told to 'get both sides' of Pride event* CNN.COM *Retrievable at:  https://www.cnn.com/2023/06/16/business/nexstar-news-probes-local-pride-coverage/index.html.*

[5] Associated Press (June 16, 2023), *TV news owner apologizes for Pride Month memo that told Michigan staff to cover fewer LGBTQ+ event,* AP NEWS *Retrievable at:  https://apnews.com/article/lgbtq-pride-month-woodtv-michigan-c7094b8cabfbc84e9c7b21f1b774bd10.*

been terminated for failing to ensure outstanding news coverage.[6] Plaintiff's counsel advised Nexstar: "Again, the preceding statement(s) was/were false and/or they portrayed our client in a false light as if he had engaged in misconduct. **WE DEMAND THAT THEY BE RETRACTED WITHIN 14 DAYS OF THE DATE OF THIS NOTICE**."(Ex. 7)

51.     Nexstar failed and refused to retract any of its statements concerning Plaintiff, either directly or by implication. Given Plaintiff's extensive work experience, training, and achievements, his employability is largely dependent on seeking comparable employment in a substantially similar capacity to his role as News Director. In today's news media market, the negative perception of a news editor as being anti-gay can have a  catastrophic impact on his or her future job prospects, affecting workplace culture, public perception, legal considerations, and professional relationships within the media industry. The negative impact of these false and defamatory statements upon Plaintiff's professional reputation cannot be overstated.  In fact, Plaintiff was unable to obtain comparable work after trying for four months.

52.     Prior to the Defendant's attacks on his professional reputation and character, Plaintiff was highly respected in the local news markets.   He has, in effect, been cancelled.  The actions of Nexstar managerial personnel in commenting on the leaked Internal Memo in ways that directly implicated Plaintiff created a mob mentality which carried over to Nexstar's managerial personnel charged with investigating and resulted in the termination of Plaintiff's employment. Unfortunately, Nexstar has damaged Plaintiff's reputation in the local news industry beyond repair. The defamatory statements, postings, false implications and unfounded charges identified in the preceding Paragraphs have been

---

[6] Reilly, Liam (June 30, 2023),   *News directors at Michigan TV station ousted after telling staff to 'get both sides' of Pride coverage*, CNN.COM *Retrievable at:  https://www.cnn.com/2023/06/30/media/michigan-news-directors-fired-pride-coverage/index.html* .
.

published electronically on public websites. They are recorded forever, and may be located and viewed at any time by anyone in the future based on random or targeted search. These false statements in which Plaintiff is named or about whom the false implications are readily apparent, shall continue to harm Plaintiff's reputation,  his future employment and future endeavors of any and all sorts, be they personal, professional, and/or business.

**COUNT I**
**DEFAMATION/DEFAMATION BY IMPLICATION**
**AGAINST NEXSTAR**

53.     Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

54.     At all relevant times Nexstar acted maliciously with intent to harm Plaintiff's professional reputation. The unprivileged statements on the part of Nexstar implied (or affirmatively stated) to third parties that Plaintiff had engaged in such severe wrongdoing that his alleged actions warranted the termination of his employment as News Director at Wood TV.

55.     The defamatory "sting" of the preceding statements and/or false implications was made all the more destructive by their repetition and extensive republication over time.(See, e.g., Ex. 5) These and the many other statements and comments in social media, news outlets, blogs and other media were and are false to the extent they alleged or implied that Plaintiff had engaged in any misconduct and/or that he acted unprofessionally in carrying out his duties as News Director.

56.     Nexstar's repeated, false statements and/or implications about Plaintiff are further indication of its malicious conduct. Nexstar obviously knows and simply does not care (and never did) that its statements and innuendos concerning Plaintiff were and are false.

57.     Nexstar disseminated knowingly false information about Plaintiff or information that was false by implication, which was published to third parties, with the extent of these false allegations not having yet been fully realized.

58.    As a direct result of Defendant's false and defamatory publications, Plaintiff has suffered immeasurable economic loss to his personal, and professional reputation each of which has been forever diminished in the community which he serves.   These statements were published in news sources around the country, including By engaging in the misconduct described in this Count, Defendants made demonstrably false statements about and concerning Plaintiff, and they caused those statements to be widely published in major public newspapers distributed throughout the United States. Defendant's comments these Defendants said and/or wrote about or concerning Plaintiff were malicious, shocking, outrageous, and offensive, and these Defendants made these statements knowing that they were entirely false.

59.    Defendant's statements and comments to the media were false and/or were false by implication when juxtaposed against the related reporting. Defendant's statements were not only false, but done so with malice to cause Plaintiff harm deliberately and intentionally in order to repair or restore Defendant's own reputation. Defendant published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of its truth or falsity. defendant either knew that the statement was false at the time, or else demonstrated "reckless disregard" as to its falsity.

60.    Among other indicia, Defendant's knowledge of its falsity is evidenced by Julie Brinks' admission to Plaintiff that the Internal Memo **was consistent** with the stated Nexstar policy(ies) of (among other things) presenting all points of view, putting  personal biases aside and approaching the coverage of all topics with balance.  Julie Brinks agreed with Plaintiff's characterization of the Internal Memo. (Ex. 1) She told him to stick with his position that the Internal Memo **was consistent** with the **Nexstar Standards Guide** or his role as News Director. The Defendant's statements caused catastrophic damage to Plaintiff's reputation.  They lowered him in the estimation of the public and/or deterred third persons (including potential employers in the media industry) from associating or dealing with him.

23

61.     Given Plaintiff's extensive work experience, training, and achievements, his employability is largely dependent on seeking comparable employment in a substantially similar capacity to his role as News Director. The false and defamatory statements juxtaposed a series of facts so as to imply a defamatory connection or a defamatory meaning portraying Plaintiff in a negative light, or created a defamatory implication by omitting facts necessary to understanding the truth about Plaintiff.

62.     After knowingly  publishing these false and defamatory statements about Plaintiff, Nexstar took no action to correct the false impressions it created concerning Plaintiff. Defendant failed and refused to retract these statements despite Plaintiff's Counsel's request for a retraction.(Ex. 7) Therefore, Plaintiff is entitled to exemplary and punitive damages.

63.     Nexstar's statements have been communicated to numerous third parties having been posted on the internet and shared among many different individuals and publicly with the intent of being seen by third individuals. As a direct and proximate result of the actions of Nexstar, Plaintiff has suffered and continues to suffer damages as a direct and proximate result, including damages per se, of the false and defamatory misrepresentations identified and complained of herein.

64.     The publications were not privileged.

65.     Defendant's acts and/or deliberate omissions were undertaken maliciously.

66.     As a proximate result of the Defendant's wrongful actions as herein described, Plaintiff has suffered damages including, but not limited to, damages to his professional reputation, emotional distress, humiliation, mortification, and embarrassment, sleeplessness and anxiety, as a direct and proximate result.

WHEREFORE, Plaintiff, respectfully requests that this Court:

A. Award Plaintiff damages for all injuries which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein,

in an amount to which he is deemed to be entitled, in excess of seventy-five thousand dollars ($75,000.00);

B.   Plaintiff compensatory, punitive, and/or exemplary damages in an amount to which he is deemed to be entitled in excess of seventy-five thousand dollars ($75,000.00); and which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein;

C.   Award Plaintiff prejudgment interest;

D.   Award Plaintiff his costs and expenses incurred in bringing this action, including reasonable attorney's fees; and

E.   Award Plaintiff such other and further relief as this Court deems appropriate.

## COUNT II
## DEFAMATION PER SE/DEFAMATION BY IMPLICATION PER SE
## AGAINST NEXSTAR

67.      Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

68.      At all relevant times Nexstar acted maliciously with intent to harm Plaintiff's professional reputation. The statements on the part of Nexstar implied (or affirmatively stated) to third parties that Plaintiff had engaged in such severe wrongdoing that his alleged actions warranted the termination of his employment.

69.      Nexstar disseminated knowingly false information about Plaintiff that was published to third parties, with the extent of these false allegations not having yet been fully realized.  As a direct result of the misconduct of Defendant, Plaintiff has suffered immeasurable economic loss to his personal, and professional reputation each of which has been forever diminished in the community which he serves.

70.      The Defendant's statements and comments to the media were false and/or were false by implication when juxtaposed against the related reporting.

25

71.     Defendant's statements were not only false, but done so with malice to cause Plaintiff harm deliberately and intentionally. Defendant published false statements or implications which imputed severe wrongdoing, malfeasance and/or gross incompetence to Plaintiff in his professional capacity.  This was conveyed to third parties with knowledge of the falsity of the statements or in reckless disregard of its truth or falsity.

72.     Among other indicia, Defendant's knowledge of its falsity is evidenced by Julie Brinks' admission that the Internal Memo **was consistent** with stated Nexstar policy(ies)  and Gary Weitman's concession that the Internal Memo was a sensitive personnel matter. They have lowered him in the estimation of the public and/or deterred third persons (including potential employers in the media industry) from associating or dealing with him.

73.     Given Plaintiff's extensive work experience, training, and achievements, his employability is largely dependent on seeking comparable employment in a substantially similar capacity to his role as News Director. The false and defamatory statements juxtaposed a series of facts so as to imply a defamatory connection or a defamatory meaning portraying Plaintiff in a negative light, or created a defamatory implication by omitting facts necessary to understanding the truth about Plaintiff.

74.     As a direct and proximate result of the actions of Nexstar in the instant matter, the Plaintiff has suffered and continues to suffer damages as a direct and proximate result, including damages per se, of the false and defamatory misrepresentations identified and complained of herein.

75.     The publications were not privileged.

76.     Defendant's acts and/or deliberate omissions were undertaken maliciously. As a proximate result of the Defendant's wrongful actions as herein described, Plaintiff has suffered losses including, but not limited to, damages to his professional reputation as well as emotional and

psychological damages as a direct and proximate result. emotional distress, humiliation, mortification, and embarrassment, sleeplessness and anxiety; and other damages that may arise during the course of discovery and the course of this trial.

WHEREFORE, Plaintiff, respectfully requests that this Court:

A.  Award Plaintiff damages for all injuries which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein, in an amount to which he is deemed to be entitled, in excess of seventy-five thousand dollars ($75,000.00);

B.  Plaintiff compensatory, punitive, and/or exemplary damages in an amount to which he is deemed to be entitled in excess of seventy-five thousand dollars ($75,000.00); and which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein;

C.  Award Plaintiff prejudgment interest;

D.  Award Plaintiff his costs and expenses incurred in bringing this action, including reasonable attorney's fees; and

E.  Award Plaintiff such other and further relief as this Court deems appropriate.

## COUNT III
## FALSE LIGHT
## AGAINST NEXSTAR

77.     Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

78.     Defendant owed Plaintiff a duty of reasonable care to not publicly present him and/or information implicitly about him in a false light and to not inflict unwarranted injury upon him.

79.     Defendant breached that duty by deliberately publishing defamatory statements and/or defamatory implications concerning Plaintiff  with knowledge of their falsity or in reckless disregard of their truth or falsity.

80.     The false statements about Plaintiff by Nexstar placed Plaintiff in a false light before the public, as a purported anti-gay, biased news director whose alleged violation of Nexstar's standards of

balance, fairness, impartiality, diligence in the pursuit of accurate reporting, rather than as an award-winning member of the independent press.

81.     It was readily foreseeable that the aforementioned breach of duty could result in the injuries sustained by Plaintiff.

82.     The publications were not privileged.

83.     As a direct .and proximate result of Defendant's publication of these defamatory statements and/or defamatory implications concerning Plaintiff, he has suffered severe, irreparable damages, including but not limited to, damages to his professional and personal reputations as well as emotional and psychological damages as a direct and proximate result.

WHEREFORE, Plaintiff, respectfully requests that this Court:

A.  Award Plaintiff damages for all injuries which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein, in an amount to which he is deemed to be entitled, in excess of seventy-five thousand dollars ($75,000.00);

B.   Plaintiff compensatory, punitive, and/or exemplary damages in an amount to which he is deemed to be entitled in excess of seventy-five thousand dollars ($75,000.00) and which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein;

C.  Award Plaintiff prejudgment interest;

D.  Award Plaintiff his costs and expenses incurred in bringing this action, including reasonable attorney's fees; and

E.  Award Plaintiff such other and further relief as this Court deems appropriate.

**COUNT IV**
**VIOLATION OF THE ERKA, MCL § 423.501 et seq.**
**AGAINST NEXSTAR**

84.     Plaintiff repeats and incorporates the allegations in the preceding paragraphs.

85.     This action is also brought pursuant to the Bullard-Plawecki Employee Right to Know Act, `MCL § 423.501 et seq. (the "ERKA"), based on Nexstar's deliberate infringement of Plaintiff's rights

under MCL §§ 423.505 and 423.506. Among other  violations of the ERKA, Defendant notified news media outlets of disciplinary action taken against Plaintiff, without providing Plaintiff the notice required by MCL § 423.506. Defendant also violated MCL § 423.505 of the ERKA by knowingly placing false information in Plaintiff's personnel file.

86.     Plaintiff meets the ERKA's definition of "employee" as "a person currently employed or formerly employed by an employer,…[.]" MCL § 423.501(2)(a). Defendant meets the ERKA's definition of "employer" as  "an individual . . . or commercial entity, which has 4 or more employees and includes an agent of the employer,…[.]" MCL § 423.501(2)(b).

87.     Per the ERKA, "Personnel record" means "a record kept by the employer that identifies the employee to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action." MCL § 423.501(2)( c).

88.     The ERKA further provides that "[a]n employer shall not divulge a disciplinary report, letter of reprimand or other disciplinary action to a third party, [or] to a party who is not part of the employer's organization without written notice." MCL § 423.506. The written notice to the employee shall be by first-class mail to the employee's last known address, and shall be mailed on or before the day the information is divulged from the personnel record. MCL § 423.506. The ERKA requires such notice to the employee regardless of whether the employer provides a document to a third party or merely provides a third party with oral information concerning the employee.

89.     Defendant violated MCL § 423.506 by notifying news media outlets of disciplinary action taken against Plaintiff, without providing Plaintiff with the notice required by MCL § 423.506. In particular, Julie Brinks informed Plaintiff he was fired on June 29, 2023.  That same day, Gary Weitman, a Nexstar spokesperson, confirmed to CNN and to Crains Grand Rapids Business (among other third

parties) that the company had made "changes" to WOOD-TV's "**newsroom leadership team**" to "**ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area…**" The same article noted that Stanton Tang, News Director of Grand Rapids-based WOOD-TV, and Amy Fox, the station's assistant news director, had been fired.  "**As these are internal personnel decisions involving matters of personal privacy, we will decline further comment,**" Weitman said. Reilly, Liam (6.30.2023 at 5:30 pm), *News directors at Michigan TV station ousted after telling staff to 'get both sides' of Pride coverage,* **CNN.COM**: Retrievable at: https://www.cnn.com/2023/06/30/media/michigan-news-directors-fired-pride-coverage/index.html;  and Balaskovitz, Andy (6.30.2023), *Firings at WOOD-TV8 in fallout from Pride Month coverage memo,* **CRAINS GRAND RAPIDS BUSINESS:** Retrievable at: https://www.crainsgrandrapids.com/news/media-marketing/firings-at-wood-tv8-in-fallout-from-pride-month-coverage-memo/

91.     Section 423.505 of the ERKA provides an employee or former employee with the right to seek expungement of any 'false' information the employer knowingly places in his personnel record. Nexstar  deliberately violated MCL § 423.505 by knowingly placing false information in Plaintiff's personnel file. In particular, Nexstar included in Plaintiff's personnel file a so-called, "Rationale for [the] termination" of Plaintiff's employment which, according to Nexstar, was due to the alleged existence of "evidence that [Plaintiff and Amy Fox] are violating the standards of journalism by letting their personal views impact their guidance on news coverage."  As outlined in this Complaint, the preceding statement (that "[Plaintiff and Amy Fox] are violating the standards of journalism by letting their personal views impact their guidance on news coverage") is false.   To the contrary, the Internal Memo and Plaintiff's job performance in general was consistent with Defendant's written standards for reporting the news as stated in the **Nexstar Standards Guide**.

92.     Defendant's willful violations of the ERKA have caused Plaintiff to suffer damages  as described herein and below, and entitles Plaintiff to injunctive relief, $200 plus actual damages, costs,

and reasonable attorney fees.

93.     As a proximate result of Nexstar's willful violations of the ERKA as herein described, Plaintiff has suffered actual damages including, but not limited to, damages to his professional reputation; damages to the extent he was not able to find any comparable employment due to widespread Nexstar's  as well as emotional and psychological damages as a direct and proximate result. Plaintiff's damages were proximately caused by the actions of Nexstar as herein previously described.

WHEREFORE, Plaintiff, respectfully requests that this Court:

A.   Direct that Nexstar remove false information from Plaintiff's personnel file and/or from the personnel records maintained by Defendant concerning Plaintiff.

B.   Award Plaintiff damages for all injuries which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein, in an amount to which he is deemed to be entitled, in excess of twenty-five thousand dollars ($75,000.00);

C.   Award Plaintiff compensatory, punitive, and/or exemplary damages in an amount to which he is deemed to be entitled in excess of seventy-five thousand dollars ($75,000.00) and which are the direct, natural, and proximate result of Defendant's wrongful acts and/or omissions, as more fully described herein;

D.   Award Plaintiff prejudgment interest;

E.   Award Plaintiff his costs and expenses incurred in bringing this action, including reasonable attorney's fees; and

F.   Award Plaintiff such other and further relief as this Court deems appropriate.

Dated: June 11, 2024                     Respectfully submitted

:                                        KNECHT LAW, PLC
                                         Attorneys for Plaintiff
                                         By:  s/Todd R. Knecht
                                              Todd R. Knecht (P35362)

JURY DEMAND

Plaintiff respectfully demands that the issues in this case be tried by a jury.

Dated: June 11, 2024                    Respectfully submitted

                                        KNECHT LAW, PLC
                                        Attorneys for Plaintiff
                                        By: By:  s/Todd R. Knecht
                                                Todd R. Knecht (P35362)

32