# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STANTON TANG, a Michigan resident,

    Plaintiff,

v.

NEXSTAR MEDIA INC., a Delaware corporation

    Defendant.

Case No. 1:24-cv-616

Hon. Robert J. Jonker

Magistrate Judge Ray Kent

**Oral Argument Requested**

| | |
|---|---|
| Todd R. Knecht (P35362) | Richard W. Warren (P63123) |
| KNECHT LAW, PLC | OGLETREE DEAKINS, PLLC |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| P.O. Box 68292 | 34977 Woodward Avenue, Suite 300 |
| Grand Rapids, MI 49516 | Birmingham, MI 48009 |
| TEL: (616) 308-4716 | TEL: (248) 631-3679 |
| trknechtlaw@gmail.com | FAX: (248) 593-2603 |
| | richard.warren@ogletree.com |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT NEXSTAR MEDIA INC.'S MOTION TO
DISMISS ALL OF PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS**

I.      **INTRODUCTION.**

     A.      **DEFENDANT IGNORES THE CONTEXT(S) DESCRIBED IN THE COMPLAINT.**

Defendant's motion largely omits critical contexts in which the defamatory statements by Defendant's corporate representatives were made.[1] As outlined in detail in the Complaint, it involves the unauthorized leaking of a <u>confidential internal memo</u> (the "Internal Memo") originating from **a news director** and **intended only for the news staff who reported to him**.[2]   It was **not for the general public**, a point that cannot be overemphasized here.

As outlined in the Complaint, Plaintiff was not just any news director – he was  an award-winning journalist with a stellar reputation built over 35 years – that is until Defendant threw him under a bus.[3] He served Defendant faithfully, striving to achieve balance, fairness and accuracy in reporting the news in direct accordance with the Nexstar Standards Guide.[4]

In the course of performing his job as News Director and in full compliance with the Nexstar Standards Guide, Plaintiff noticed that WOOD TV appeared to be covering and/or publishing almost every item of information related to or arising out of "Pride Month," regardless of its newsworthiness.[5] By way of example only, WOOD TV's web site included reports on approximately fourteen Pride-related items between May 30, 2023 and June 12, 2023. Given the memo's directive to the news reporting staff – to focus on events that are newsworthy – the Internal Memo could have been addressed to any topic that was routinely reported on WOOD TV from time to time. This one happened to be about Pride Month in June 2023.

---

[1] The fact pattern in the case at bar is unique. This uniqueness requires the parties and this Court to attend with careful focus to the nuanced distinctions **when it comes to applying Michigan law of implied defamation** to the unusual circumstances and context put forth in great detail in plaintiff's Complaint.
[2] Ex. 1 to Plaintiffs' Complaint (ECF No. 2, PageID.36).
[3] Tang Complaint (ECF No. 1, PageID.4, ¶11).
[4] Tang Complaint (ECF No. 1, PageID.6-7, ¶¶16-19).
[5] Tang Complaint (ECF No. 1, PageID.7-8, ¶¶20-22).

At Plaintiff's direction, Assistant News Director Amy Fox prepared an internal memorandum (the "Internal Memo") in email form to Defendant's staff reporters recommending that they provide more balanced coverage of Pride Month events in the West Michigan area.[6] The Internal Memo stated that the station had already done a number of "valuable stories" on Pride month-related events but that "we have also started to hear pushback from viewers who are not happy to see those Pride-related stories." The Internal Memo added that not every Pride Month event "needed to be covered," and it encouraged employees to be "thoughtful" about which stories they chose to pursue. "We do not cover every event or festival that happens in West Michigan. We simply do not have the time or staff to do so," it stated. According to the Internal Memo, "We need to do some work to discern the newsworthiness of the event. If we are covering Pride events, we need to consider how to make the story balanced and get both sides of the issue." [7]

### B. CONSISTENT WITH ITS POSITION IN THE MEDIA, DEFENDANT CONTINUES ITS FALSE CLAIM THAT IT FIRED PLAINTIFF FOR "ENGAGING IN MISCONDUCT."

According to the Complaint, the statements by Brinks and Weitman that **Nexstar is "looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers**" and that Nexstar "**will take appropriate action as necessary to address this situation**" (in juxtaposition with the fact that Plaintiff had already been identified as the originator of the Internal Memo) falsely implied (and/or stated directly) that Plaintiff had engaged in misconduct and/or acted unprofessionally and was being investigated.

Consistent with its position in the media, defendant continues its false claim that it fired plaintiff for "engaging in misconduct." According to Defendant, it terminated Plaintiff's employment "**after he**

---

[6] Ex. 1 to Plaintiffs' Complaint (ECF No. 2, PageID.36).
[7] Ex. 1 to Plaintiffs' Complaint (ECF No. 2, PageID.36).

**engaged in misconduct** that caused the newsroom to lose confidence in him, and for violating the standards of journalism by letting his personal views impact news coverage."[8] **Not true.** The Internal Memo was not "misconduct." It was spot on. As the Complaint asserts, it was an internal communique in which the news editor was reminding his news reporting staff to consider the newsworthiness of particular stories – a directive precisely in line with the Nexstar Standards Guide and his specifically defined role as news director.[9] Again, this "position" taken by Defendant's instant motion, (i.e., that Plaintiff's role in the origination and distribution of the Internal Memo somehow constituted "misconduct") is squarely in line with the statements made by its corporate representatives to the media after the Internal Memo was leaked. Again, the Internal Memo could have been addressed to any topic in which Plaintiff reminded the reporting staff of the importance of adhering to the Nexstar Standards. This one happened to be about Pride Month in June 2023. It was leaked through no fault of the news director. Once it was made public, the potential for its contents to be taken out of context, misquoted and/or misrepresented and the consequent harm to the Plaintiff's professional reputation grew from hour to hour, and from day to day.

    C.    DEFENDANT MISCHARACTERIZES PLAINTIFF'S CLAIMS

Contrary to Defendant's contentions, Plaintiff's Complaint contains numerous, detailed accounts of Defendant's (direct and implicit) defamatory allegations (maliciously undertaken). By way of example only, the Tang Complaint describes the context as well as the falsity of the following statements by Defendant's corporate personnel in articles, some of which also identified Plaintiff by name and noted his role as the originator of the Internal Memo or "the communication":

> As early as June 14, 2023, media outlets were falsely reporting that Plaintiff, in his capacity as news director at WOOD TV, had directed Assistant News Director Amy Fox to prepare an Internal Memo which ordered their staff reporters not to cover Pride-related events. (Ex.5,

---

[8] Defendant's Motion to Dismiss (ECF No. 8, PageID.105, at p.7 of 23).
[9] Tang Complaint (ECF No. 1, PageID.6-7, ¶¶16-19).

3

starting at p.1 and following) [10]

The preceding allegation – that the Internal Memo ordered staff reporters not to cover Pride Related events – was false. According to the Complaint, Defendant's representatives referred to the Internal Memo as "the communication" in media posts, bearing in mind that these articles and posts had already identified Plaintiff by name and noted his role as the originator of the Internal Memo. The Complaint asserts:

> On June 15, 2023, an article by Executive Producer Luke Stier was posted on WOOD TV's very own website entitled, "WOOD TV Parent Company Responds To Newsroom Memo." (Ex.5, Item# 7, at p.5) It quoted Gary Weitman, Nexstar's chief communications officer. **Referring to the Internal Memo as the "communication," Weitman stated in part that the "communication…[was] not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers**" and that "[w]e will take appropriate action as necessary to address this situation…" (Ex.5 to Complaint, Item# 7, at p.5) [11]

The preceding statement by Defendant, i.e., **that Plaintiff's authorized the distribution of a "communication" that was not consistent with Nexstar's values, the way it covers the news, or the respect it has for its viewers would have been and in fact was a death knell to Plaintiff's career.** And it was false. The Internal Memo was entirely consistent with Plaintiff's marching orders as Director of the News, e.g., to ensure fair, unbiased and evenhanded reporting in accordance with the Nexstar Standards Guide. These allegations (made by Defendant's representatives) were/are especially damaging to a now former news editor seeking comparable employment.

> On June 15, 2023, Gary Weitman, Nexstar's chief communications officer, was quoted in a posted article on woodtv.com, "About us": "We're looking into the situation at WOOD-TV, **as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers. We will take appropriate action as necessary to address this situation, and apologize for offending members of the LGBTQ community and WOOD-TV's viewers.**"

The Complaint further alleges on the same day (and in the same stories) that the media reported

---

[10] Tang Complaint (ECF No. 1, PageID.10-11, ¶29).
[11] Tang Complaint (ECF No. 1, PageID.11, ¶30).

4

the termination of Plaintiff's employment, Defendant's corporate representatives commented to several national publications that the company had made changes to "the newsroom leadership team," falsely implying that Plaintiff had engaged in misconduct when in fact he had adhered directly to Nexstar's Standards:

> "On Thursday, June 29, 2023, Plaintiff was notified that his employment was being terminated. On Friday, June 30, 2023, CNN reported that Stanton Tang, news director of Grand Rapids-based WOOD-TV, and Amy Fox, the station's assistant news director, had been fired "following the circulation of an internal memo calling for scaled-back coverage of Pride Month events and directing the station's journalists to 'get both sides' on LGBTQ issues.." [12]

> "In the same story, CNN reported that on Thursday, June 29, 2023, **Gary Weitman, a Nexstar spokesperson, had confirmed to CNN "that the company had made changes to WOOD-TV's newsroom leadership team."** According to Weitman, these "<u>**changes to WOOD-TV's newsroom leadership team" were made to "ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area" implying that Plaintiff had been terminated from his job as News Director for failing to ensure outstanding news coverage**</u>.

According to the Complaint, the preceding statements were false. In fact, he was acting in accordance with Nexstar's core principles, i.e., to achieve balance, fairness, and accuracy in reporting the news. The falsity of these implications was made all the more damaging to Plaintiff's reputation when viewed in juxtaposition the identification of Plaintiff as the originator of the Internal Memo.

As outlined in the Complaint, Defendant utterly abandoned Plaintiff once the Internal Memo was leaked.  In fact, Defendant picks up where it left off – it now calls his act of directing the creation of the Internal Memo "misconduct." It also fails to squarely  address the crucial elements of Michigan's law of defamation by implication as it applies to the instant facts.  As outlined in the complaint, Nexstar destroyed Plaintiff's reputation when (among other things) its own corporate representatives leaked an internal memo; fired him and (among other things) simultaneously stated falsely to national news outlets

---

[12] Tang Complaint (ECF No. 1, PageID.17-18, ¶49).

that the content of a leaked internal memo required "changes" to "the newsroom leadership team" and was "not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers…" and similar statements. Those statements were made in the media in articles and posts which also identified the Plaintiff, a foreseeable, ongoing occurrence since each and every one of their statements were published over and over again in numerous internet postings, ***47 of which are attached as Exhibit 5 to Plaintiff's complaint.***

Nexstar's public statements falsely implied that as News Director, Plaintiff had violated Nexstar's editorial standards and, in so doing, he had failed to ensure outstanding news coverage. These statements, among others, were false or were false by implication. In fact, he was acting precisely in accordance with Nexstar's core principles, i.e., to achieve balance, fairness, and accuracy in reporting the news. Their falsity was made all the more damaging to Plaintiff's reputation when viewed in juxtaposition to the public statements of Nexstar's own corporate representatives and other sources clearly identifying Plaintiff as the originator of the Internal Memo in the same media articles and posts.

Nexstar's motion to dismiss is a flawed effort to escape liability which resorts to semantics and the futile parsing of abstract language - utterly unmoved by the catastrophic damage it caused to the stellar reputation of an award-winning news editor built over more than 35 years by the malicious and defamatory statements cavalierly conveyed to the media by its own corporate personnel. Plaintiff's claims include defamation per se; defamation by implication per se; and false light.

Defendant apparently believes this is a wrongful discharge case. Per Defendant, the Plaintiff "engaged in misconduct" that caused the "newsroom to lose confidence in him." Defendant adds that in filing this lawsuit, he is "seeking to shift the blame for his actions and misconduct."[13] But this is not about whether Defendant had a reason to fire the Plaintiff. As an employee at will, it could terminate

---

[13] Defendant's Motion to Dismiss (ECF No. 8, PageID.105, at p.7 of 23).

him for any reason or no reason. It just could not lie about him in the public square.

Defendant also mischaracterizes Plaintiff's claims for defamation/defamation per se (Count I); defamation by implication per se (Count II); and false light (Count III). Unfortunately, Defendant omits the gist or the sting of these allegations. They have killed Plaintiff's career. Plaintiff's Complaint alleges claims against Defendant Nexstar for defamation/defamation by implication (Count I), defamation per se/defamation per se by implication (Count II), false light (Count III) and violation of the Bullard-Plawecki Employee Right to Know Act by means of the placement of false information in Plaintiff's personnel records (Count IV).

II. **RELEVANT COMPLAINT ALLEGATIONS**

   A. **RELEVANT ASPECTS OF PLAINTIFF'S CREDENTIALS AND HIS JOB AT WOOD-TV.**

Plaintiff is an award-winning journalist with a stellar reputation – that is until Defendant threw him under a bus.[14] His reputation and career are obviously relevant as part of the context in in which Defendant destroyed his reputation because no comparable news outlet would hire him after he was terminated. His distinguished career spanned 35 years in local news coverage. As of June2013 (the month when all of this happened), Plaintiff had built a distinguished reputation as a news director. Prior to 2005, he worked at KPNX in Phoenix, KCRA in Sacramento and KLAS in Las Vegas.[15] From 2005 until 2009, he served as an Executive Producer at WZZM covering the Grand Rapids - Battle Creek - Kalamazoo market. He was promoted to News and Information Director at WZZM in 2009 and served until his departure in 2014. He was News Director at Kolo-TV in Reno, Nevada from 2014 until November 2021. Finally, he was News Director at WOOD TV from December 2021 until the effective date of his firing from Defendant's employ on July 1, 2023.[16]

---

[14] Tang Complaint (ECF No. 1, PageID.4, ¶11).
[15] Tang Complaint (ECF No. 1, PageID.4, ¶11).
[16] Tang Complaint (ECF No. 1, PageID.4-5, ¶¶12-13).

Among other awards and accolades, Plaintiff was inducted into the Nevada Broadcasters Association Hall of Fame in 2016 for excellence in broadcasting. In November 2021, he was inducted into the NATAS-SF Silver Circle, one of the news reporting industry's elite societies. To be eligible for membership, individuals must have been actively engaged in television broadcasting for 25 years or more, made a significant contribution to its local television markets and distinguished themselves within the industry and the community. [17]

**Plaintiff's Overall Responsibilities** *as Described in the Complaint.*. Plaintiff served as News Director at Defendant's wholly owned "WOOD TV" station from December 2021 until the termination of his employment effective July 1, 2023.[18] As News Director, Plaintiff's duties included ensuring that the news operation abides by the Nexstar News Standards Guide. [19].

**Plaintiff Strove To Ensure News Reporting Consistent with the "Nexstar's Standards Guide."** The Complaint asserts that Plaintiff's performance was consistently rated to meet or exceed expectations. [20] As outlined in the Complaint, Plaintiff's job was all about striving to achieve balance, fairness and accuracy in reporting the news in accordance with the Nexstar Standards Guide. At the direction and/or with the express and/or tacit approval of Defendant's managerial personnel, Plaintiff strove to ensure that coverage by the news reporting staff was consistent with the stated policies in the Nexstar Standards Guide of (among other things) presenting balanced, unbiased coverage of newsworthy topics. It was part of his job.

By working to achieve a balance in the station's news coverage, Plaintiff was acting in accordance with Defendant's core journalism principles, e.g., to achieve balance, fairness and accuracy in reporting

---

[17] Tang Complaint (ECF No. 1, PageID.5, ¶13).
[18] Tang Complaint (ECF No. 1, PageID.5, ¶13).
[19] Tang Complaint (ECF No. 1, PageID.5, ¶13).
[20] Tang Complaint (ECF No. 1, PageID.5, ¶14).

8

the news and, most importantly, to ensure that WOOD TV and Defendant are always perceived as a reliable source for news and information. In paragraph 16 through 18, the complaint describes how plaintiff at all times acted in accordance with Defendant's journalism principles. These included achieving balance, fairness and accuracy in the reporting of the news and ensuring that Defendant was always perceived as a reliable source for news and information. The Nexstar standards guide states that "balance, fitness and accuracy are fundamentals to our coverage and then getting the facts right is more important than being online or social media."

Finally, with respect to plan his job, as part of his efforts to ensure fair unbiased and even-handed reporting in accordance with the Nexstar Standards Guide, Plaintiff conducted mandatory quarterly standards refresher training for every employee on the news staff. This training was on the crucial importance of accuracy and balance reporting in the news, including but not limited to, the need for a second set of eyes on every story.

      **B.**    **EVENTS LEADING TO THE CREATION AND DISTRIBUTION OF THE INTERNAL MEMO ON JUNE 13, 2023**

The month of June 2023 was designated as Pride Month in Michigan. On May 31, 2023, WOOD TV posted on its web site (under "Grand Rapids"), a **"LIST: 2023 Pride Month events in West Michigan"** which identified at least 30 events set to occur between May 31, 2023 and July 2023. On or about the morning of June 13, 2023 and at other times, Plaintiff reviewed the station's ongoing news coverage of various topics, events and informational items, to ensure they were newsworthy, including but not limited to, Defendant's coverage of Pride Month. In the course of performing his job as News Director and in full compliance with the Nexstar Standards Guide, Plaintiff noticed that WOOD TV appeared to be covering and/or publishing almost every item of information related to or arising out of "Pride Month," regardless of its newsworthiness. By way of example only, WOOD TV's web site included reports on approximately fourteen Pride-related items between May 30, 2023 and June 12, 2023.

9

At Plaintiff's direction, Assistant News Director Amy Fox prepared an internal memorandum (the "Internal Memo") in email form to Defendant's staff reporters recommending that they provide more balanced coverage of Pride Month events in the West Michigan area. (A copy of the Internal Memo is attached as Exhibit 1). The Internal Memo stated that the station had already done a number of "valuable stories" on Pride month-related events but that "we have also started to hear pushback from viewers who are not happy to see those Pride-related stories." The Internal Memo added that not every Pride Month event "needed to be covered," and it encouraged employees to be "thoughtful" about which stories they chose to pursue. "We do not cover every event or festival that happens in West Michigan. We simply do not have the time or staff to do so," it stated. According to the Internal Memo, "We need to do some work to discern the newsworthiness of the event. If we are covering Pride events, we need to consider how to make the story balanced and get both sides of the issue." (Ex. 1)

### C.     DEFENDANT MISCHARACTERIZES THE IMPACT OF THE INTERNAL MEMO.

Attempting to buttress its argument that Plaintiff engaged in misconduct, Defendant incorrectly contends that when the Internal Memorandum was distributed to the news staff "a station revolt follow[ed]."[21] While there was a definite reaction from some staff members, the Complaint does not say that a "station revolt followed" the distribution of the Internal Memo. In fact, Defendant even references that portion of the Complaint in which (WOODTV General Manager) Julie Brinks downplays the characterization by other WOODTV personnel where she states that she did not believe the Memorandum amounted to discrimination.[22]

Moreover, the Complaint describes an internal investigation launched by the Defendant once the contents of the Internal Memo were leaked to the media. Per the Complaint, Defendant Nexstar sent its HR personnel to conduct an internal "investigation," **into the unauthorized leaking of Nexstar's**

---

[21] Defendant's Motion to Dismiss (ECF No. 8, PageID.108, at p.10 of 23).
[22] Defendant's Motion to Dismiss (ECF No. 8, PageID.108, at p.10 of 23).

**confidential information (including the Internal Memo) to the media**. As far as Plaintiff is concerned, he was never advised by anyone in Defendant's employ that he had committed "misconduct" even at the time of his firing. Unfortunately, the person or persons conducting the investigation on behalf of Nexstar failed to compile an accurate version of the events and made unfounded conclusions in an apparent effort to lay the entire blame for the Internal Memo, the negative reaction of some employees to it and the storm of publicity stemming from its publication upon Plaintiff.

### D.  DEFENDANT'S REPRESENTATIVES FALSELY IMPLIED OR STATED THAT PLAINTIFF HAD ENGAGED IN AND HE WAS ULTIMATELY FIRED FOR ENGAGING IN MISCONDUCT.

Defendant claims that it was "third parties" who made defamatory allegations concerning Plaintiff so those "third parties" are at fault, not the Defendant. As outlined in the Complaint, however, Defendant is the largest owner of local TV news stations in the U.S. and Plaintiff's employer. Therefore, the statements by Defendant's representatives (that the "communication" violated its standards and, accordingly, a change in leadership was necessary, among others) were especially damaging here because they came with a level of credibility and they implied that Plaintiff had engaged in and he was ultimately fired for engaging in misconduct.

### E. In its entirety, the Complaint alleges that Defendant's personnel leaked the Internal Memo.

According to the Complaint, and the Defendant's own public statements therein, its own executive producers (Luke Stier, Madeline Odle) were fired for disclosing the Internal Memo. The Complaint further alleges:

> Defendant Nexstar is responsible for the conduct of its managerial personnel, including but not limited to, Luke Stier, Madeline Odle, Gary Weitman and Julie Brinks. At all times relevant to this action, Stier, Odle, Weitman and Brinks were employees, agents, representatives and/or servants of Defendant Nexstar acting within the scope of their respective employment on behalf of Defendant Nexstar. Stier and Odle served as Executive Producers at Wood TV in the employ of Defendant

11

Nexstar until they were fired on or about June 29, 2023. In posting articles on Wood TV's web site and/or in making statements on social media (as more fully described herein), Stier and Odle acted within the scope of their employment and the agency expressly granted to and/or ratified by Nexstar.

### F. Nexstar's Public Implications were Materially false and Harmed Plaintiff.

Contrary to Defendant's assertion, Defendant's public implications were materially false and harmed Plaintiff as outlined herein and in the Complaint.

### III. ARGUMENTS AND AUTHORITIES

#### A. STANDARDS FOR DISMISSAL UNDER RULE 12(B)(6).

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain **either direct or inferential allegations** respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999)

Contrary to Defendant's position, the instant Complaint contains more than "bare recitals" or "conclusory statements." Among other allegations, Plaintiff's Complaint asserts in part:

#### B. PLAINTIFF'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR DEFAMATION BY IMPLICATION.

According to the Complaint, the public comments of Defendant's corporate representatives defamed Plaintiff's reputation (both expressly and by implication) when juxtaposed against related coverage in the same stories or close in time media posts identifying Plaintiff as the originator of the Internal Memo – *which is why Defendant's representatives felt obliged to comment – they were responding to this storm of coverage.* Michigan recognizes "a cause of action for defamation by implication[.]" *See, e.g., American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 702; 609 NW2d 607 (2000). The "statements must be viewed in context to determine whether they can reasonably

be understood as stating actual facts about the plaintiff." *Ireland v. Edwards,* 230 Mich.App. 607, 613, 584 NW2d 632 (1998)( "considering the context, we decline to hold as a matter of law that they are incapable of defamatory meaning. Thus, these statements are at least potentially actionable")

To prove a defamation by implication claim, a plaintiff need not show that a statement was literally false, but must show "that the defamatory implications [were] materially false." Id.  As outlined in detail in this Response Brief and in the Complaint, To state a claim for defamation, Plaintiff must plead facts showing: (1) an unprivileged false and defamatory statement; (2) communicated to a third-party; (3) with fault of at least recklessness; and (4) special harm caused.  *Ghanam v. Does*, 303 Mich. App. 522, 544 (2014). Because Defendant is the largest owner of local TV news stations in the U.S. and Plaintiff's employer, the statements by Defendant's representatives were especially damaging here because they came with a level of credibility and they  implied that Plaintiff had engaged in and he was ultimately fired for engaging in misconduct.

### 1. Plaintiff's Complaint sets forth his Defamation claims with specificity.

The Complaint makes clear that once the Internal Memo was leaked to the media starting on June 14, 2023, the Plaintiff's identity as the originator of the Internal Memo was mentioned in internet posts and articles starting that very same day.  Defendant's representatives then publicly commented implying that the originator of the "communication" had violated Nexstar's "values" and "the way" it "covers the news." The following segment from the Complaint must be read in  juxtaposition with the publications in which Defendant's personnel commented on "the communication" as the basis for an investigation (because it violated Defendant's standards) and warranted a change in leadership:

> 48. When juxtaposed with comments in the media, (e.g., that Plaintiff caused the distribution of an "anti-gay" memo),  the statements by Brinks and Weitman that Nexstar is "**looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers**" and that Nexstar "**will take appropriate action as necessary**

13

**to address this situation"** falsely implied (and/or stated directly) that Plaintiff had engaged in misconduct and/or acted unprofessionally.

49. On Thursday, June 29, 2023, Plaintiff was notified that his employment was being terminated. On Friday, June 30, 2023, CNN reported that Stanton Tang, news director of Grand Rapids- based WOOD-TV, and Amy Fox, the station's assistant news director, had been fired "following the circulation of an internal memo calling for scaled-back coverage of Pride Month events and directing the station's journalists to 'get both sides' on LGBTQ issues.." **In the same story, CNN reported that on Thursday, June 29, 2023, Gary Weitman, a Nexstar spokesperson, had confirmed to CNN "that the company had made changes to WOOD-TV's newsroom leadership team." According to Weitman, these "changes to WOOD-TV's newsroom leadership team" were made to "ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area" implying that Plaintiff had been terminated from his job as News Director for failing to ensure outstanding news coverage.**

Again, the preceding statements were false. In fact, he was acting in accordance with Nexstar's core principles, i.e., to achieve balance, fairness and accuracy in reporting the news. Contrary to Defendant's contention, Plaintiff's complaint does allege that Defendant's comments as tarnishing Plaintiff with an "anti-gay" bias. "When juxtaposed with comments in the media, (e.g., that Plaintiff caused the distribution of an "anti-gay" memo),

Defendant incorrectly cites the federal district court's opinion in *Adamo Demolition Co. v. Int'l Union of Operating Engineers Local 150*, 439 F.Supp.3d (E.D. Mich. 2020), where (according to Nexstar) the court dismissed the complaint because the statements did not specifically reference or concern Adamo, and did not contain a "provably false factual connotation." Id. Unfortunately, Nexstar omits the principal basis for the dismissal, (i.e., the district court's finding that Adamo's claims were preempted under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185).

Also, in apposite is Defendant's citation to *Curtis v. Evening News Ass'n*, 135 Mich. App. 101; 352 NW2d 355 (1984), where the Michigan Court of Appeals held that Plaintiff's defamation claim required

14

dismissal because the statements at issue contained no reference to Plaintiff. Id. at 103-104. Again, the facts in Curtis bear no resemblance to the instant case where the implications from Defendant's statements were materially false in the context outlined in detail in the instant Plaintiff's Complaint. 103.

### 2. Plaintiff's Complaint alleges statements with actionable, materially false implications; not simply opinions.

In today's world of media and the public in general, accusing a news editor (directly of by implication ) of "misconduct" and/or of employing "anti-gay" bias in the reporting of news would tend to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *See, e.g., Reighard v. ESPN, Inc.*, 991 NW 2d 803, 341 Mich. App. 526 (Mich App, 2022), where the Court observed that:

> "[a] subset of the tort of defamation is known as "defamation by implication," citing, *Hawkins v. Mercy Health Servs., Inc.*, 230 Mich.App. 315, 330, 583 N.W.2d 725 (1998). See also *Locricchio v. Evening News Ass'n*, 438 Mich. 84, 123, 476 N.W.2d 112 (1991); American Transmission, Inc. v. Channel 7 of Detroit, Inc., 239 Mich.App. 695, 702, 609 N.W.2d 607 (2000). "[S]uch a cause of action might succeed even without a direct showing of any actual literally false statements." Hawkins, 230 Mich.App. at 330, 583 N.W.2d 725. Liability for defamation by implication may be imposed based not on what is affirmatively stated, but on what is implied when a defendant "juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts [such that] he may be held responsible for the defamatory implication[.]" Prosser & Keeton, Torts (5th ed, 1988 Supp), § 116, p. 117 (citations omitted). "A defamation by implication stems not from what is literally stated, but from what is implied." White v. Fraternal Order of Police, 285 U.S. App. D.C. 273, 279, 909 F.2d 512, 518 (1990).

### 3. The Complaint sets forth overwhelming evidence of Defendant's malicious intent in support of his defamation claim.

Contrary to Defendant's assertion, the Complaint sets forth overwhelming evidence of Defendant's malicious intent in support of his defamation claim. Among other indicia, Defendant's knowledge of its falsity is evidenced by Julie Brinks' admission to Plaintiff that the Internal Memo was consistent with the stated Nexstar policy(ies) of among other things) presenting all points of view, putting personal biases aside and approaching the coverage of all topics with balance. Julie Brinks

agreed with Plaintiff's characterization of the Internal Memo. [23] She told him to stick with his position that the Internal Memo was consistent with the Nexstar Standards Guide or his role as News Director. The Defendant's statements caused catastrophic Damage to Plaintiff's reputation. They lowered him in the estimation of the public and/or deterred third persons (including potential employers in the media industry) from associating or dealing with him.

Among other allegations, it is clear from the complaint that Defendant's internal communications had misgivings about characterizing the Internal Memo as having been inconsistent with Nexstar's standards:

> In response to her email of June 16, 2023 (Ex. 6),Plaintiff expressed his personal objection to Brinks' contemplated message to "local media." (Ex. 6, at p.3) In particular, Plaintiff explained to Julie Brinks that in fact the Internal Memo which Amy Fox had distributed by email (at his direction) on June 13, 2023 was consistent with the stated Nexstar policy(ies) of (among other things) presenting all points of view, putting personal biases aside and approaching the coverage of all topics with balance. His email quoted the policy back to Brinks: "The Nexstar policy says, "We present all points of view. We reach out to the subjects or stakeholders of a story. We put our personal biases aside to approach the topics we cover with balance. Nexstar journalists at all levels should refrain from political activity. Impartiality leads to trust." (Ex. 6, at p.3) Separately, Julie Brinks agreed with Plaintiff's characterization of the Internal Memo. (Ex. 6, at p.2) She told him to stick with his position that the Internal Memo was consistent with the Nexstar Standards Guide in his role as News Director. [24]

> ….Nexstar's true motivation was to damage Plaintiff's professional reputation and destroy his credibility by blaming him for the actions of Defendant's own personnel. Toward this end, Nexstar's internal "investigation" was perfunctory and of limited scope

---

[23] Tang Complaint (ECF No. 1, PageID.23, ¶60).
[24] Tang Complaint (ECF No. 1, PageID.23, ¶60).

16

conducted in whole or in part by one or more persons from Nexstar with an apparent interest in facilitating Plaintiff's ultimate termination. Instead of acknowledging that the Internal Memo truly was consistent with the **Nexstar Standards Guide**, Nexstar disavowed its contents **both internally to its workforce and outwardly to the public in its repeated verbal comments and written statements to media outlets and internet publications.** [25]

Plaintiff's employability is largely dependent on seeking comparable employment in a substantially similar capacity to his role as News Director. In today's news media market, the negative perception of a news editor as being anti-gay can have a catastrophic impact on his or her future job prospects, affecting workplace culture, public perception, legal considerations, and professional relationships within the media industry. The negative impact of these false and defamatory statements upon Plaintiff's professional reputation cannot be overstated. In fact, Plaintiff was unable to obtain comparable work after trying for four months.

Prior to the Defendant's attacks on his professional reputation and character, Plaintiff was highly respected in the local news markets. He has, in effect, been cancelled. The actions of Nexstar managerial personnel in commenting on the leaked Internal Memo in ways that directly implicated Plaintiff created a mob mentality which carried over to Nexstar's managerial personnel charged with investigating and resulted in the termination of Plaintiff's employment. Unfortunately, Nexstar has damaged Plaintiff's reputation in the local news industry beyond repair.

Among other things, Nexstar created a false narrative in which Plaintiff deliberately failed to inform his general manager (during the management meeting on the morning of June 13, 2023) that he had planned all along to generate such an internal memo because, according to Nexstar narrative, he intended to promote an "anti-gay" agenda. This was false. [26]

---

[25] Tang Complaint (ECF No. 1, PageID.16, ¶44).
[26] Tang Complaint (ECF No. 1, PageID.14, ¶39).

### 4. Plaintiff Properly Pleaded Count II as Defamation By Implication per se.

Contrary to Defendant's assertion, Count II on defamation by implication per se sets forth a cause of action and clarifies plaintiff's claims by incorporating the other counts.  According to FR Civ P 10, "[a] later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

### C.   Plaintiff's Complaint states a plausible claim for false light upon which relief can be granted.

Contrary to Defendant's assertion, Plaintiff's false light claim states a claim upon which relief can be granted. Paragraph 80 asserts that  [t]he false statements about Plaintiff by Nexstar placed Plaintiff in a false light before the public, as a purported anti-gay, biased news director whose alleged violation of Nexstar's standards of balance, fairness, impartiality, diligence in the pursuit of accurate reporting, rather than as an award- winning member of the independent press." Count III incorporates all the preceding allegations.  Most importantly, it disclosed additional false information (once the Internal Memo was leaked) which placed the Plaintiff in a false light by lending credibility to  Plaintiff's alleged role in distributing a memo which violated Defendant's standards and then disclosing the fact that he was terminated in the same article in which it noted that a "change in leadership" was necessary pursuant to the investigation it had conducted because (it falsely implied or stated) that its standards and values had been violated.  *See Duran v. Detroit News, Inc.*, 200 Mich. App. 622; 504 N.W. 2d 715 (Mich. App. 1993).

IV. **CONCLUSION**

      For the reasons set forth above, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

| | |
|---|---|
| Dated: August 30, 2024 | Respectfully submitted |
| | KNECHT LAW, PLC<br>Attorneys for Plaintiff |
| | By: _s/Todd R. Knecht_____<br>   Todd R. Knecht (P35362) |

19