UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANTON TANG

        Plaintiff,

v.

NEXSTAR MEDIA INC., a Delaware corporation

        Defendant.

Case No. 1:24-cv-00616

Hon. Robert J. Jonker

Magistrate Judge Ray Kent

**Oral Argument Requested**

| Todd R. Knecht (P35362) | Richard W. Warren (P63123) |
|---|---|
| KNECHT LAW, PLC | OGLETREE DEAKINS, PLLC |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| P.O. Box 68292 | 34977 Woodward Avenue, Suite 300 |
| Grand Rapids, MI 49516 | Birmingham, MI 48009 |
| TEL:  (616) 308-4716 | TEL: (248) 631-3679 |
| trknechtlaw@gmail.com | FAX: (248) 593-2603 |
| | richard.warren@ogletree.com |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT NEXSTAR MEDIA INC.'S MOTION
TO DISMISS ALL OF PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS**

I. **INTRODUCTION**

Plaintiff's Response fails to cite any grounds to prevent dismissal of his claims for defamation, defamation *per se*, and false light. Instead, Plaintiff: (a) reiterates the same insufficient allegations in the Complaint and (b) attempts to muddy the waters sufficiently in a vain attempt to meet Federal Rule of Civil Procedure 8's pleading standards.

As Nexstar Media Inc.'s ("Nexstar" or "Defendant") moving papers establish, the Court should dismiss each of Plaintiff's claims because they do not assert plausible claims for relief. Plaintiff baldly states that the statutory elements of each alleged claim have been met but does not, and cannot, provide direct support with allegations from the Complaint, or citation to controlling law for his position. Instead, Plaintiff focuses almost entirely on statements made by third parties separate and apart from Nexstar and attempts –without any legal support – to improperly conflate and hold Nexstar vicariously liable for third party blogs and articles that reference Plaintiff and attribute negative characteristics to him. However, Plaintiff's Complaint makes no mention of any such theory. Indeed, Plaintiff is clear that he alleges "*Defendants made demonstrably false statements* about and concerning Plaintiff" and "*Nexstar disseminated* knowingly false information about Plaintiff or information that was false by implication…" (Compl. ECF No. 1, PageID.22-23, ¶¶ 57, 58)(emphasis added). Perhaps now realizing the fatal shortcomings of his Complaint, Plaintiff now seeks, via his Response, to expand his claims to include allegations not contemplated by the Complaint. Indeed, the only allegation related to statements made by Nexstar's employees are unadorned accusations that are insufficient to withstand scrutiny under *Iqbal/Twombly*. (Compl. ECF No. 1, PageID.11, 17, ¶¶ 31, 47).

To support his False Light claim, instead of addressing Nexstar's argument that Plaintiff failed to allege actual malice or facts showing false statements, Plaintiff merely recites

1

insufficiently pled allegations in paragraph 80 of the Complaint, with the bare assertion that "Plaintiff's false light claim states a claim upon which relief can be granted." (Resp. ECF No. 19, PageID.228).  This is tantamount to an admission that the claim requires dismissal.  Conclusory recitations are not sufficient to withstand a motion to dismiss pursuant to FRCP 12(b)(6).

Finally, Plaintiff unsuccessfully attempts to distinguish governing case law cited by Defendant. For reasons discussed below, these attempts are unavailing. Moreover, cases cited by Plaintiff to support his assertions of defamation and defamation by implication are readily distinguishable. More than a cursory glance at the case law cited by Plaintiff reveals an entirely different set of circumstances which led to the Courts' decisions. Indeed, Count II of Plaintiff's Complaint erroneously seeks relief for "defamation per se/defamation by implication per se" citing "immeasurable economic loss to his…professional reputation." (Compl. ECF No. 1, PageID.25 ¶69). Clear Michigan precedent establishes just the opposite, that defamation regarding one's business or profession is not defamation *per se*.

Given the foregoing, Plaintiff's defamation, defamation *per se*, and false light claims – which rest entirely on alleged Nexstar statements that do not name Plaintiff, do not label him as "anti-gay," or attribute any negative characteristics to him at all – are fatally flawed from their inception and require dismissal.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Standards for dismissal under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Bare recitals of a cause of action, supported by mere conclusory statements, are insufficient to satisfy the federal pleading requirements.  See *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Moreover, "a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Here, accepting as true all of the well-pleaded factual allegations of the Complaint, and viewing them in the light most favorable to Plaintiff, Plaintiff's Complaint fails to state a claim upon which relief can be granted for defamation and false light, and those claims should be dismissed.

      **B.**    **Plaintiff's Response fails to state a plausible claim for defamation upon which relief can be granted.**

To state a claim for defamation, Plaintiff must plead facts showing: (1) an unprivileged false and defamatory statement; (2) communicated to a third-party; (3) with fault of at least negligence on the part of the publisher; and (4) special harm caused by the publication. *Ghanam v. Does*, 303 Mich. App. 522, 544 (Ct. App. 2014). Plaintiff has failed to sufficiently plead these elements, and thus dismissal of his claims is appropriate.

          **1.**    **Plaintiff misstates Michigan law as it relates to defamation *per se* claims.**

In his Opposition, Plaintiff states that "Count II on defamation by implication per se sets forth a cause of action and clarifies plaintiff's claims by incorporating the other counts." (Resp. ECF No. 19, PageID228). While Plaintiff may certainly support his claims via incorporation of previous allegations, Plaintiff has failed to plead defamation *per se* as a matter of Michigan law. At common law, defamation *per se* concerned "issues of chastity, commissions of a crime, loathsome disease, or <u>disparagement of one's profession or business</u>." *See Nehls v. Hillsdale Coll.*, 65 F. App'x 984, 990-91 (6th Cir. 2003) (emphasis added). However, the analysis does not stop there. When Michigan codified defamation, it specifically eliminated the disparagement of a person's profession or business as grounds for defamation *per se* and retained the rule relating to words imputing a lack of chastity or allegations imputing the commission of a crime. *See* Mich. Comp. Laws 600.2911(1); *see also* MCL 600.2911(2)(a) (stating "plaintiff is entitled to recover only for the **actual damages** which…she has suffered in respect to…her property, business, trade,

3

profession, occupation, or feelings.")(emphasis added); *George v. Senate Democratic Fund*, No. 253202, 2005 WL 102717 (Mich. Ct. App. May 3, 2005) (recognizing that statements concerning one's business or profession are not actionable as defamation *per se*); *Lakin v. Rund,* 318 896 N.W.2d 76, 81 (Mich. App. 2016), *appeal denied*, 894 N.W.2d 53 (Mich. 2017) (finding that the prevailing rule in Michigan courts is that words constitute defamation *per se* only "if the invoked crime involves moral turpitude or would subject the person to an infamous punishment."); *see also Daneshvar v. Kipke*, 266 F. Supp. 3d 1031, 1055 (E.D. Mich. 2017) (finding same). This is fatal to Plaintiff's defamation *per se* and defamation *per se* by implication claim in Count II of his Complaint.

### 2. The facts presented by cases cited by Plaintiff are inapposite to the facts he has alleged.

Plaintiff asserts that he has properly stated a claim for defamation by implication, relying heavily on block quote from *Reighard v. ESPN, Inc.*, 991 N.W.2d 803 (Mich. App. 2022) in which the Court cites *Hawkins v. Mercy Health Services, Inc.*, 583 N.W.2d 725 (Mich. App. 1998) to support a finding of defamation by implication. (Resp. ECF No. 19, PageID225). Both *Reighard* and *Hawkins*, however, actually serve to reinforce critical shortcomings in Counts I and II of Plaintiff's Complaint, thereby establishing why those claims must be dismissed.

The first and most obvious difference in both *Reighard* and *Hawkins* is that the alleged defamatory publications were released directly by the defendant, not myriad third-party individuals and organizations (as here). The other distinguishing components of the cases are more nuanced.

Reighard served as the head women's gymnastics coach for Central Michigan University and was placed on a paid administrative leave pending an internal investigation in February 2019. It was confirmed by the University's athletic director and multiple news articles that the

investigation had nothing to do with sexual misconduct of any kind. Despite this, Daniel Murphy, a news reporter for ESPN, who had received awards for his coverage of the Larry Nassar sexual abuse scandal posted two tweets. *Reighard*, 341 Mich. App. 531-533. The first identified John Geddert as a close friend of Larry Nassar, widely known for his sexual abuse scandal and subsequent conviction, and that Geddert was the head coach of the 2012 Olympic team who was the subject of an ongoing investigation for physical and mental abuse of his gymnasts. *Id*. The second tweet, posted within minutes of the first, identified Reighard by name as CMU's "longtime gymnastics coach" and stated that Reighard had a longstanding personal and professional relationship with Geddert. *Id*. The Court, reading the tweets together, reasoned that the first tweet paired Geddert with Nassar's public sexual-abuse convictions and the second tweet, posted on the heels of the first, connected Reighard to the sexual abuse scandals by implication, arguably implying that the reason Reighard was placed on administrative leave was related to the supposedly long personal and professional relationship with Geddert. *Reighard*, 341 Mich. App. 541-542.

In *Reighard*, the two tweets that gave rise to defamation by implication came from the same source and were made nearly at the same time, which directly implied involvement in sexual abuse. Moreover, because Tweets were limited by character at the time of posting, Murphy *had* to publish the two tweets separately due to the limitations imposed by the platform. Here, inapposite to the facts of *Reighard*, Plaintiff asks the Court to find defamation by implication on the basis of statements made by third parties unaffiliated with Nexstar, cobbled together over the course of several days. Plaintiff has not alleged two or more statements *published by Nexstar* that can be construed as defamation by implication. This is fatal to Plaintiff's defamation claim.

5

In *Hawkins*, nurse plaintiff was involved in administering 1000x the required dose of a medication, leading to the death of a patient. *Hawkins* at 318. Shortly after the incident, Hawkins was overheard by the family of the deceased patient criticizing the doctor's handling of the patient's care. *Id.* After the family reported the incident, Hawkins lied to investigators about her inappropriate comments. *Id.* Accordingly, the hospital informed the plaintiff she would be terminated due to lying to investigators (but did not mention her involvement in the administration of the incorrect dosage to the deceased patient). *Hawkins* at 319. Hawkins managed to convince the hospital to allow her to resign effective that same day in lieu of termination. *Id*. The hospital then published two statements. The first informed the public of the administration of "an inappropriate dosage of medication" and the ultimate expiration of the patient the same day. *Hawkins* at 320-321. The second, a statement following the results of the hospital's internal investigation into the death of the patient, stated in part:

> The Credentials Committee will perform an evaluation of this patient's medical care.
> Our administration has also instituted disciplinary action. **In accordance to [*sic*] our employee disciplinary policies and procedures, one employee is no longer with the hospital**. Another employee has received an appropriate disciplinary action.

*Hawkins* at 321 (emphasis added).

Based on the above publication, the Court found it reasonable that the *implication* was that Hawkins' employment was terminated because she caused the death of the patient. *Hawkins* at 334. Because Hawkins properly alleged and introduced evidence to support that her employment ended not because of her involvement in the overdose, but because she lied about her participation in the inappropriate conversation about the doctor's handling of the patient's care, the Court concluded that the hospital's publication – which referenced her and attributed the death of a patient to her – was false and defamatory. While the publication did not name Hawkins, she was

the *only* individual terminated as a result of the incident and therefore the only individual to whom the publication could refer. Supporting its conclusion that the implications of the hospital's publication were false and defamatory, the Court found that, "the alleged conduct for which Hawkins may have been fired, is far different conduct than negligence in administering medication to a patient." *Hawkins* at 336.

Critically, even though the alleged defamatory statements made in *Hawkins* did not name the plaintiff by name, the <u>only person</u> that could have been the subject of the defamatory publication was the plaintiff – she was the only individual discharged following the incident. Therefore, a casual reader would have understood the statement to refer specifically to Plaintiff. Unlike here, where the casual reader would have no idea to whom Nexstar's statements referred. Moreover, the hospital directly stated that "one employee is no longer with the hospital." *Hawkins* 230 Mich. App. at 321. Plaintiff Tang did not, and cannot, allege that he was the only person referenced by Nexstar's publications. Instead, Nexstar stated:

> Diversity, equity and inclusion are among Nexstar's core values. Our local TV stations are expected to cover and report the news of the day in an expansive and inclusive fashion, consistent with these values. We're looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers. We will take appropriate action as necessary to address this situation, and apologize for offending members of the LGBTQ community and WOOD-TV viewers.

(Compl. ECF No. 1, PageID.20, ¶ 50). Far from naming Plaintiff, Nexstar's publication did not directly reference the termination of <u>any</u> employee nor did it attribute any bad behavior to Plaintiff (unlike the defendant in *Hawkins* and *Reighard*). This feature, critical to the court's reasoning in *Hawkins* and *Pattison*, is glaringly absent from Plaintiff's allegations, and it demonstrates why *Hawkins* does not control the result here.

7

*Hawkins* also made clear that to establish a claim for defamation by implication, the Plaintiff still must sufficiently plead material falsity. *Hawkins*, 230 Mich. App. at 329. Here, following a workplace investigation, Plaintiff Tang was terminated because he engaged in misconduct that caused the newsroom to lose confidence in him, and for violating the standards of journalism by letting his personal views impact news coverage. Nexstar released a statement referring to the internal memo drafted by Plaintiff that it would "take appropriate action as necessary to address this situation." (Compl. ECF No. 1, PageID.20, ¶ 50). Both the direct and indirect implications of Nexstar's publication are perfectly aligned with the reasons underlying Plaintiff's termination. Therefore, inapposite to *Hawkins*, Plaintiff has failed to sufficiently plead material falsity, which requires dismissal of his claim because that is an essential element of defamation by implication under *Hawkins*.

As further support of his claim for defamation by implication, Plaintiff cites *Ireland v. Edwards*, 584 N.W.2d 632 (Mich. App. 1998) for the proposition that "statements must be viewed in context to determine whether they can reasonably be understood as stating actual facts about the plaintiff." *Ireland* at 638. Plaintiff also cites *Ireland* for its holding that "we decline to hold as a matter of law that [the alleged defamatory statements] are incapable of defamatory meaning." *Ireland* at 639. Foremost, *Ireland* is not a case brought under the theory of defamation by implication. Unlike the facts presented by Plaintiff's Complaint, *Ireland* is a classic defamation case: a defendant directly published false statements about the plaintiff. Plaintiff also fails to note that the Court, reasoning that the published statements amounted to "rhetorical hyperbole," dismissed the plaintiff's claims of defamation as to the vast majority of the twenty alleged defamatory statements, and only four statements survived. Each of the four surviving statements

contained verifiably false information and, critically, were published directly by the defendant, not a third party.

### 3. Nexstar cannot be vicariously liable for statements made by Nexstar employees and unrelated third parties.

In an attempt to plead material falsity, Plaintiff citing third-party published articles from media outlets entirely unaffiliated with Nexstar.[1] According to Plaintiff, these third party media sources devised "at least 47 articles or substantive internet posts…many of which defamed Plaintiff's professional reputation as a news director…by falsely implying that (among other things) Plaintiff was anti-gay." (Compl. ECF No. 1, PageID.3-4, ¶ 9). Statements made by third parties cannot provide the foundation for a defamation claim where the defendant is entirely unaffiliated with the third parties. It is axiomatic that a defamation claim cannot be based solely on a third parties' statement, as that would simply eliminate the prima facie elements and Plaintiff's burden of proof. Indeed, no Michigan or Sixth Circuit Court has ever interpreted a valid defamation claim to exist where a defendant fails to publicly decry negative statements made by unassociated third parties.

The social media posts made by Nexstar employees on their private social media accounts referenced in Plaintiff's Complaint are also not defamatory as a matter of law, for the same reasons as set forth above as to Nexstar's alleged statements. The employees did not identify Plaintiff by name, and none of them claimed that Plaintiff had been terminated, or referred to Plaintiff as anti-gay. By way of example, Plaintiff's Complaint references an alleged post by Ellen Bacca. That post, however, only states "The newsroom is not standing for it. Not only is it incredibly offensive to suggest Pride events be covered less than others…to appeal to a political belief goes against the

---

[1] Plaintiff, of course, remains free to assert claims against those unrelated third parties.

9

very heart of what journalism is supposed to be." (Compl., Exhibit 5, ECF No. 1-6, PageID.54). This post does not mention Plaintiff, does not claim he was terminated for misconduct, does not identify the Internal Memorandum and does not refer to Plaintiff as "anti-gay." Instead, it merely reflects Bacca's belief about the intent of journalism, and her personal standards for journalism. Even the comment from Luke Stier referenced in Exhibit 5 of the Complaint – "this memo was met with immediate pushback. The guidance is not being followed" – was in response to a tweet stating "**A Grand Rapids TV station** reportedly told its staff to cover less Pride events." (Exhibit 5, ECF No. 1-6, PageID.68). As can be plainly seen, neither the Stier message, nor the tweet it responded to, mentioned Plaintiff, attributed the Internal Memorandum to him, or painted him as "anti-gay." Although the Odle statement referenced in the Complaint mentions the "news director & assistant ND," it does not describe Plaintiff as "anti-gay," nor does it attribute any negative characteristics or malicious intent to him and only takes the position that the memo "does not reflect our views." (Compl., Exhibit 5, ECF No. 1-6, PageID.68).

Given the foregoing, those opinions and statements cannot be the basis of a defamation claim as a matter of law. See *Mitan v. Campbell*, 474 Mich. 21, 24; 706 NW2d 420 (2005) (holding that to be actionable, an alleged defamatory statement must be false). Plaintiff's attempt to harness these social media posts as a foundation for defamatory statements attributed to Nexstar is similarly unavailing. Crucially, these employees were not acting within the scope of their employment when posting on social media.[2]

---

[2] The posts cited by Plaintiff were uploaded to private social media accounts and were made by individuals professing their privately held political beliefs. These beliefs are entirely separate from their employment with Nexstar. Moreover, Nexstar has conducted a thorough review of Michigan law and has not located a single case holding that employee social media posts on private accounts are within the scope of employment so as to confer vicarious liability to the employer for intentional torts like defamation.

10

### 4. Plaintiff fails to distinguish cases that unequivocally support Nexstar's position.

Plaintiff's time spent attempting to distinguish cases cited by Nexstar is wasted. For instance, Plaintiff alleges that in *Adamo Demolition Co. v. International Union of Operating Engineers Local 150*, the claims were preempted under Section 301 of the Labor Management Relations Act, which was the "principal basis for the dismissal." (Resp. ECF No.19, PageID.224). Plaintiff cites this incomplete picture of the Court's holding, likely in an attempt to demonstrate a key difference between the analysis in *Adamo* and the facts here: a showing of actual malice. However, Plaintiff fails to note that the Court engaged in an "even if" analysis. *See Adamo*, 439 F. Supp. 3d 933, 945 (E.D. Mich. 2020). Specifically, the Court stated that "even if LMRA preemption does not apply to Adamo's defamation and injurious falsehood claims, the claims are subject to dismissal under Rule 12(b)(6)." *Id*. The Court's reasoning was because (as here) the allegedly defamatory statements were "objective statement[s] of fact," and the statements did not concern Adamo, "which is an essential element of Adamo's claims." *Adamo* at 946. Conveniently, Plaintiff does not address this section of the Court's opinion.

Plaintiff next contends with *Curtis v. Evening News Association*, 352 N.W.2d 355 (Mich. App. 1984) by stating that "the facts in Curtis bear no resemblance to the instant case where the implications…were materially false in the context." (Resp. ECF No. 19, PageID. 225). However, *Curtis* is directly on point: here, Plaintiff has also failed to *sufficiently* allege any implicit reference to himself in the alleged defamatory statements published by Nexstar. Mere accusations are insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In his Response, Plaintiff states that he has alleged an implicit reference, however, he has failed to plead in his Complaint any factual allegations that support such a statement.

### 5. Plaintiff's Response fails to support a plausible claim for false light upon which relief may be granted.

Plaintiff's Response fails to cure critical shortcomings of the allegations contained in Count III of his Complaint for False Light. Notably, in the Complaint, Plaintiff failed to sufficiently allege actual malice, an essential element of a false light claim. *See Foundation for Behavior Resources v. W.E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406 (Ct. App. 2020). Instead, Plaintiff makes the unsupported assertion that "Defendant…published defamatory statements and/or defamatory implications concerning Plaintiff with knowledge of their falsity or in reckless disregard of their truth or falsity." (Compl. ECF No. 1, PageID.27 ¶ 79). Not only is this conclusory assertion insufficient to withstand a motion to dismiss, it is even insufficient in light of the cases cited by Plaintiff. *See*, *Ireland v. Edwards*, 584 N.W.2d at 640 (finding that actual malice is not established by merely alleging that statements were made with preconceived objectives and that "reckless disregard" is established by alleging "the publisher in fact entertained serious doubts concerning the truth of the statements published."). Here, Plaintiff has utterly failed to do so, because he cannot. In fact, Nexstar never entertained serious doubt about the validity of its published statements because its statements were all entirely true. Plaintiff's recitations are precisely the "formulaic recitation[s] of the elements of a cause of action" and "unadorned accusation[s]" held by the Supreme Court in *Twombly* and *Iqbal* to be insufficient to survive a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

For all of the foregoing reasons, Plaintiff's false light claim fails to state a claim upon which relief can be granted, and must be dismissed. *See Duran v. Detroit News, Inc.*, 200 Mich. App. 622; 504 N.W. 2d 715 (Mich. App. 1993)(dismissing false light claim, which was based on news article stating that plaintiffs left Colombia after one of them received death threats, because

12

the information in the article neither attributed false characteristics to plaintiffs, nor did it place them in a false position).

### III.   CONCLUSION

For the reasons set forth above, Defendant Nexstar Media Inc. respectfully requests the Court dismiss Plaintiff's defamation and false light claims with prejudice, and order any other award the Court deems just and equitable.

Respectfully submitted,

*/s/ Richard W. Warren*
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
richard.warren@ogletree.com

Dated: September 16, 2024

## **CERTIFICATE OF COMPLIANCE**

I certify that the text of this *Reply Brief in Support of Defendant Nexstar Media Inc.'s Motion to Dismiss Plaintiff's Claims for Defamation and False Light*, as counted by Microsoft Word 2016, consists of 3,907 words including heading, footnotes, citations, and quotations (but excluding the case caption, cover page, table of contents, table of authorities, the signature block, this certificate of compliance, certificate of service, and exhibits) and complies with the requirements of Local Civil Rule 7.2(b)(i) and (ii) of the United States District Court for the Western District of Michigan.

As permitted by Local Civil Rule 7.2(b)(ii), the undersigned has relied upon the word count feature of this word processing system in preparing this Certificate of Compliance.

Respectfully submitted,

 */s/ Richard W. Warren*
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603

Dated: September 16, 2024            richard.warren@ogletree.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 16, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

                                                        /s/ Richard W. Warren
                                                        Richard W. Warren (P63123)
                                                        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC
                                                        *Attorneys for Defendant*
                                                        34977 Woodward Avenue, Suite 300
                                                        Birmingham, MI 48009
                                                         TEL: (248) 631-3679
                                                        FAX: (248) 593-2603
                                                        richard.warren@ogletree.com